RAAFAT TADROS *v.* MIDDLEBURY MEDICAL
CENTER, INC., ET AL.
(SC 16866)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued February 20—officially released April 22, 2003

*Thomas J. Sansone*, with whom, on the brief, was *Lucy M. Romeo*, for the appellant (defendant Giuseppe Tripodi).

*Robert P. Hanahan*, with whom was *Edward J. Duffy, Jr.*, for the appellee (substitute defendant SNEMS, LLC).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the trial court properly concluded that a right of first refusal, reserved to the grantor in a certain contract for the sale of real property, applied within the context of a foreclosure sale. The defendant, Giuseppe Tripodi, appeals[1] from the judgment of the trial court permitting the intervening defendant, Edgar C. Savarese, and his assignee, SNEMS, LLC (SNEMS), to exercise its right of first refusal to purchase certain real property on which Tripodi successfully had bid in a foreclosure sale. On appeal, Tripodi claims that the trial court improperly determined that the foreclosure sale triggered the ability to exercise the right of first refusal

---

[1] Tripodi appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

retained by Savarese and, thereafter, assigned to SNEMS, in a deed conveying the property to the named plaintiff, Raafat Tadros, and the named defendant, Middlebury Medical Center, Inc. (Middlebury).[2] SNEMS claims that the trial court properly concluded that its right of first refusal applied within the context of a foreclosure sale, and that the trial court properly permitted it to exercise that right. We conclude that the trial court improperly determined that the right of first refusal at issue in the present case applied in the context of a foreclosure sale.[3] Accordingly, we reverse the judgment of the trial court, and we direct that court on remand to approve the sale of the property to Tripodi.

The record reveals the following undisputed facts and procedural history. Tadros brought the underlying action for foreclosure on a mortgage held by him on property owned by Middlebury.[4] Subsequently, the trial court granted Tadros' motion for judgment for foreclosure by sale, appointed a committee to administer the foreclosure sale, and set an auction date of April 27, 2002. While preparing for the foreclosure sale, the court-appointed committee discovered that Savarese owned a right of first refusal on the property and, on April 10,

---

[2] Neither Tadros nor Middlebury have any interest in the outcome of this appeal, and they have not filed briefs. For purposes of clarity, we refer to all parties by name.

[3] Tripodi also claims on appeal that: (1) the trial court improperly concluded that the right of first refusal survived despite the fact that the property was transferred to Middlebury with Savarese's permission; and (2) the trial court improperly determined that the right of first refusal applied when the proposed transfer was to one of the original grantees of the property who originally had given Savarese that right. Because of our disposition of Tripodi's claim concerning application of the right of first refusal to the foreclosure sale, we need not reach these additional claims.

[4] Savarese retained a right of first refusal in a deed conveying the property at issue in the present case to Tadros and Tripodi. Thereafter, Tripodi and Tadros transferred their interest in the property to Middlebury, and, in order to secure his interest, Tadros took a mortgage on the property. After instituting the present foreclosure action for nonpayment, Tadros assigned his interest in the mortgage to the plaintiff Constitution Equities Corporation.

2002, moved the court for advice as to how it should conduct the sale given the existence of that right. The terms of the right of first refusal, contained in warranty deeds from Savarese to Tadros and Tripodi, and thereafter from Tadros and Tripodi to Middlebury, provided in relevant part: "If the grantees . . . [form] the intention of offering the premises, or any interest therein for sale, grantees shall . . . notify [Savarese] of his intention and the terms proposed . . . and his heirs, executors, administrators or assigns shall have the right for 10 days to enter into a contract for said terms, [or] . . . if grantees . . . shall accept a bona fide, written offer to sell the premises, or any interest therein or to assign or transfer it for value, grantees shall hand deliver or send a copy of the written offer to [Savarese] . . . . [Savarese] shall have thirty (30) days to match said offer on the same terms and conditions. . . ."[5]

---

[5] The deed conveying the property at issue in the present case from Savarese to Tadros and Tripodi, contained the right of first refusal retained by Savarese. It provided as follows: "The property conveyed herein is conveyed subject to a right of first refusal retained by [Savarese], in favor of [Savarese], his heirs, executors, administrators or assigns, which shall run with the land and shall be limited to thirty-five (35) years duration. So long as the right of first refusal shall remain in effect, neither the grantees nor grantees' heirs, executors, administrators or assigns shall sell, assign or transfer for value, the premises conveyed herein, or any interest therein, without first offering the premises, or the interest proposed to be conveyed, to [Savarese], [his] successors or assigns, upon the same terms and conditions, in the manner set forth in the next paragraph.

"If the grantees, their heirs, executors, administrators or assigns forms the intention of offering the premises, or any interest therein for sale, grantees shall, prior to incurring liability for a brokers commission, notify [Savarese] of his intention and the terms proposed (net of commission), and his heirs, executors, administrators or assigns shall have the right for 10 days to enter into a contract for said terms, net of any brokers commission. Whether or not the grantees so notify [Savarese], or whether or not [Savarese] allows said 10 day period to pass without entering into a contract, if grantees, their heirs, executors, administrators or assigns shall accept a bona fide, written offer to sell the premises, or any interest therein or to assign or transfer it for value, grantees shall hand deliver or send a copy of the written offer to [Savarese], certified mail, postage prepaid, return receipt requested, at [Savarese's] address set forth above. [Savarese] shall have thirty (30) days to match said offer on the same terms and condi-

Rather than deciding the effect of this right on the foreclosure sale at the time the committee moved for advice, the trial court ordered the committee to inform bidders at the sale of the existence of the right of first refusal held by Savarese, and concluded that the issue of the application of the right could be resolved after completion of the sale. At the foreclosure sale, Tripodi was the successful bidder and, accordingly, he deposited $65,000 with the court to secure his bid. After the sale of the property was completed, Savarese moved to intervene in the foreclosure action. The court granted Savarese's motion. At the hearing on Savarese's motion to intervene, the trial court concluded that the right of first refusal was applicable in the context of a foreclosure sale, and ordered that notice of the proposed sale be served on Savarese through his counsel. The committee, upon order of the trial court, subsequently served notice of the proposed sale on Savarese. On June 28, 2002, the committee was notified that: (1) Savarese had assigned his interest in the right of first refusal to SNEMS; and (2) SNEMS had exercised the right by depositing with the court $65,000 and a notice of its exercise of a right of first refusal. After Tripodi moved the court for an articulation of its earlier decision applying the right of first refusal to the foreclosure sale, the trial court concluded that, as a matter of law, the plain language of the deed providing for the right of first refusal permitted Savarese and his assigns to match any offer or acceptance of the sale of the premises on the same terms of the proposed transaction, and that the foreclosure action ordered by the court triggered

tions. . . .
"This right of first refusal shall not apply to the granting of any mortgage, utility easement, boundary line adjustment, gift or bargain sale, provided however, that it shall apply, on the terms and conditions set forth in the preceding paragraph, to any sale or transfer for value by a mortgagee which has foreclosed the premises, and to any sale or transfer for value made by a donee or purchaser at a bargain sale."

that right of first refusal under the contract. Accordingly, the court approved the sale of the property to SNEMS. This appeal by Tripodi followed.

Tripodi claims that, based upon the plain language of the deed, the trial court improperly determined that the right of first refusal applied to a foreclosure sale. SNEMS claims that the trial court properly determined that the foreclosure sale triggered its right to exercise the right of first refusal. We agree with Tripodi.

As a threshold matter, we must address the standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Torres* v. *Waterbury*, 249 Conn. 110, 118–19, 733 A.2d 817 (1999). Tripodi has challenged the trial court's legal determination that the right of first refusal applied to a foreclosure sale. Accordingly, our review is plenary.

Turning to the merits of the appeal, we note that "[a] right of first refusal is known more technically as a preemptive option, as a right of preemption, or simply as a preemption. A right of pre-emption is a right to buy before or ahead of others; thus, a pre-emptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specified terms, but, and this is the important point, *only if the seller decides to sell*. It does not give the pre-emptioner the power to compel an unwilling owner to sell, and therefore is distinguishable from an ordinary

option." (Emphasis added; internal quotation marks omitted.) *Hare* v. *McClellan*, 234 Conn. 581, 588–89, 662 A.2d 1242 (1995). Thus, the purpose of a right of first refusal is not to allow the holder to compel the property owner to sell the property at a designated price, as may be the case with the existence of an option. See, e.g., 1 E. Farnsworth, Contracts (2d Ed. 1998) § 3.23a, p. 328 ("[t]he holder of an option on a piece of land has the power to make a contract to buy the land simply by accepting the grantor's offer, while the holder of a right of first refusal on a piece of land has only the right to *receive* an offer from the grantor's to sell the land" [emphasis added]).

Rather, the purpose is to allow the holder of the right to be notified when the owner intends to sell, or has accepted an offer, which, in most cases, will be presumptively the fair market value of the property, and to allow the holder to purchase the property under identical terms.

Under the plain language of the terms of the agreement in the present case, Savarese, and thereafter, his assignee, SNEMS, could exercise the right of first refusal only if one of two conditions were met. First, SNEMS' right would be triggered if the grantees "form[ed] the intention" of selling the premises. Second, SNEMS could exercise its right of first refusal if the grantees accepted a bona fide, written offer to purchase the property. Neither of these conditions was met in the present case.

The first condition was not met because there is no evidence that Middlebury formed the intention to sell the property. Middlebury did not sell the property; rather, the court-appointed committee was the seller for the purpose of the foreclosure action brought by Tadros. Moreover, common sense dictates that,

because Tadros was forced to bring a foreclosure sale for nonpayment, the sale was not voluntary and Middlebury had no intention to sell the property.

The second condition to the exercise of the right of first refusal, namely, the acceptance of a bona fide, written offer to sell the premises, also was not met. The committee did not accept a bona fide, written offer to purchase the property; rather, it sold the property in accordance with a court order to conduct a foreclosure sale. Thus, because the committee did not accept any bona fide, written offer to purchase the property, the second condition to the exercise of SNEMS' right of first refusal did not occur. On the basis of the plain language of the deed retaining the right of first refusal, therefore, the right did not apply within the context of the foreclosure sale conducted by the committee.

We note that our conclusion that the right of first refusal at issue in the present case could not be exercised within the context of a foreclosure sale is in accord with the conclusions reached by other courts on the same issue. For example, in *Henderson* v. *Millis*, 373 N.W.2d 497, 503 (Iowa 1985), the Iowa Supreme Court concluded that a sale by foreclosure did not activate the exercise of a right of first refusal that encumbered the property. In that case, the property owners granted a mortgage on certain real property that was subject to a right of first refusal held by adjoining landowners. Id., 502. The property owners subsequently transferred the property without notifying the holders of the right of first refusal. Id. Thereafter, the bank, which held the mortgage on the property, instituted foreclosure proceedings, but again failed to notify the holders of the right of first refusal. Id. At the foreclosure sale, the defendant was the successful bidder. Id. After the holders of the right of first refusal learned of the foreclosure sale, they brought an action seeking to quiet

title in themselves, claiming that their right of first refusal was triggered by the foreclosure sale. Id.

The court in *Henderson* began its analysis by looking to the language of the instrument, which, in that case, stated that the right of first refusal was triggered when the original property owner or their assigns elected to sell the property. Id. The court determined that the right of first refusal at issue in *Henderson* was "couched in terms of a choice: in the event that grantors 'elect to sell.' " Id., 503. The court concluded that, because the foreclosure sale had been ordered by the court, the debtor had no choice in the matter and, therefore, could not have elected to sell the property. Id. Accordingly, the foreclosure sale did not trigger the plaintiffs' ability to exercise their right of first refusal. Id.; see also *Draper* v. *Gochman*, 400 S.W.2d 545, 547 (Tex. 1966) (foreclosure sale did not trigger preemptive right exercised only upon owner's desire to sell property); annot., 17 A.L.R.3d 962 (1968), and cases cited therein.

In the present case, SNEMS claims, however, that the plain language of the deed supports its view that the drafters contemplated the ability to purchase the property at a foreclosure sale. Specifically, SNEMS points to language in the deed that states that the right of first refusal "shall apply . . . to any sale or transfer for value by a mortgagee which has foreclosed the premises," as support for its proposition that the deed contemplated the possibility of foreclosure and the ability to exercise the right within that context. We are not persuaded.

The language to which SNEMS points merely allows the holder of the right of first refusal to exercise it when a mortgagee, who has taken title to the premises through the foreclosure process, thereafter intends to sell or accepts a bona fide written offer to sell the property. The language does not, as SNEMS suggests,

give the holder the ability to exercise the right of first refusal in the foreclosure proceeding itself.

We also note that, as a policy matter, acceptance of SNEMS' argument, that the holder of a right of first refusal can exercise that right in the context of a foreclosure sale, would interfere with the process of liquidation established in our procedures for foreclosures by sale. The existence of a right of first refusal could detrimentally affect the number of bidders at the sale and thus potentially affect the bid price obtained for the property. Similarly, potential bidders likely would be discouraged from bidding at auctions when they are aware that any successful bid can be matched by a holder of a right of first refusal after completion of the auction. Therefore, we conclude that the trial court improperly permitted SNEMS to exercise its right of first refusal within the context of the foreclosure sale. It should be noted, however, that the plain language of the deed retaining the right of first refusal, states that the right shall "run with the land and shall be limited to thirty-five (35) years duration." Accordingly, despite our conclusion that Tripodi, as the successful bidder at the foreclosure sale, is entitled to ownership of the property, he takes the property subject to SNEMS' right of first refusal, which can be exercised at any time within the duration of the right should either of the two conditions discussed previously in this opinion be satisfied.

The judgment is reversed and the case is remanded to the trial court with direction to approve the sale of the property to Tripodi.

In this opinion the other justices concurred.