**CENTRAL EXECUTIVE COMMITTEE OF ODWU, INC., Appellant**

v.

**CARBON COUNTY TAX CLAIM BUREAU and Michael and Melissa Solt.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 2005.

Decided Feb. 9, 2006.

---

Robert T. Yurchak, Nesquehoning, for appellant.

Kim R. Roberti, Jim Thorpe, for appellees, Michael and Melissa Solt.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and COHN JUBELIRER, Judge.

OPINION BY President Judge COLINS.

The Central Executive Committee of ODWU, Inc. (ODWU) appeals an order of the Court of Common Pleas of Carbon County that denied the exceptions ODWU filed to a tax upset sale of property.[1]

The facts, derived from the trial court's opinion, indicate that the Carbon County Tax Claim Bureau (Bureau) held a tax upset sale of property title of which was held by Michael and Anna Halamay. The deed giving title to the Halamays also gave ODWU a right of first refusal, which states in pertinent part:

[I]n the event, Grantee, his heirs and assigns, desire to sell said premises, Grantor, its successors and assigns, reserves the right of first refusal of any bona fide offer made to Grantee, his heirs and assigns, provided however that said right to purchase shall be exercised by Grantor, its successors and assigns within sixty (60) days after written notice of said offer.

(Emphasis omitted.)

The Halamays became delinquent in their property tax obligations, and the bureau conducted a tax upset sale, through which the Solts purchased the property.

The sole issue ODWU raises is whether the trial court erred in failing to conclude that ODWU was entitled to notice of the tax upset sale by virtue of its right of first refusal. The trial court concluded that because Section 602 of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.602, requires taxing authorities to provide notice only to record owners of properties, and Section 102 of the Law, 72 P.S. § 5860.102, defines "owner" simply as "the person in whose name the property is last registered ... [,]" the bureau satisfied the statutory requirements of the Law by notifying the Halamays, and was not required to notify ODWU as a party with a right of first refusal. The trial court further opined that ODWU lacked standing, as the Law allows only owners or lien creditors to file exceptions. Underlying the trial court's rationale was its conclusion that, under the terms of the deed, ODWU had the right of first refusal, but only when the record owner, or their heirs and assigns, desired to sell the property and received a "bona fide offer." The trial court reasoned that a forced sale did not fall within the terms of the right of first refusal.

ODWU cites this court's decision in *Donaldson v. Ritenour,* 105 Pa.Cmwlth. 383, 524 A.2d 1044 (1987), in support of its claims that the bureau was required to provide it with actual notice. In that case

---

1. Our standard of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision lacking in evidentiary support, or erred as a matter of law. *Cruder v. Westmoreland County Tax Claim Bureau,* 861 A.2d 411 (Pa.Cmwlth. 2004), *petition for allowance of appeal denied,* 582 Pa. 703, 871 A.2d 193 (2005).

the Donaldsons filed a complaint to quiet title. The trial court sustained preliminary objections to the complaint. The subject of the dispute was a piece of property that the appellees, the Ritenours, owned and in which, by deed they conveyed a life estate to Robert Ritenour, and upon his death to Robert's daughter until she reached age 21, at which time the property was to revert back to the Ritenours. The daughter turned 21 before the death of Robert, and hence she no longer had any interest in the property. However, while Robert was still living, the municipality conducted a tax sale, and the property was purchased by Michael and Rita Romansky. Robert Ritenour received notice of the sale, but not the elder Ritenours. The Romanskys, who bought the property at tax sale, conveyed the property to the Donaldsons, who filed the quiet title action, contending that the elder Ritenours had lost any interest in the property following the tax sale.

This court disagreed with the Donaldsons' argument that the Ritenours' interest was merely that of contingent remaindermen who therefore did not possess a vested interest in the property. The Court noted that the contingent remainder constituted a reversion, and therefore a vested interest representing the remaining portion of the fee simple interest not conveyed to the life tenant, Robert.

In addressing the notice provisions of the law, the Court noted that the Law protects mortgagees' interests and record judgment creditors—legally protected property interests. The Court quoted the Law, which provides that "such sale shall convey title to the property under and subject to the lien of every recorded obligation, claim, lien, estate, mortgage or ground rent." 524 A.2d at 1046 (emphasis omitted). The Court summarized by saying, "[i]t would, we believe, be anomalous

to require notice of a tax sale to protect judgment creditors and mortgagees while failing to require such notice for those with a vested property interest such as the appellees." *Id.*

The Solts suggest that the threshold issue is whether ODWU had standing to file its exceptions. Under Section 607(b) of the Law, 72 P.S. § 5860.607(b), which pertains to the notice required following the sale of property, only owners and lien creditors have the right to file exceptions to a tax sale. ODWU is neither.

The Solts contend that even if parties other than record owners and lien creditors have standing to file exceptions, ODWU does not have standing because it lacks a vested interest: the forced sale of the property does not activate its right of first refusal. Literally, this is correct, as the provision in the deed states: "In the event Grantee, his heirs and assigns, **desire to sell** said premises, [ODWU], its successors and assigns, **reserves the right of first refusal of any bona fide offer** made to the Grantee, his heirs and assigns. (Emphasis added.)"

The Solts rely on several decisions from other jurisdictions, also cited by the trial court, holding that a foreclosure or other involuntary sale does not trigger a right of first refusal. *Tadros v. Middlebury Medical Center, Inc.,* 263 Conn. 235, 820 A.2d 230 (2003) (Right of first refusal is different from an option contract in that the right of first refusal is dependent upon the property owner's decision to voluntarily sell.); *see also Henderson v. Millis,* 373 N.W.2d 497 (Iowa 1985); *Draper v. Gochman,* 400 S.W.2d 545 (Texas 1966); *In Re Rigby's Estate,* 62 Wyo. 401, 167 P.2d 964 (1946) (First refusal was not a true option for lessee because he had no right to require a sale unless the lessor decided to sell.) The Solts also point to the definition of "right of first refusal" in Black's Law

Dictionary: "A potential buyer's contractual right to meet the terms of third party's offer if the seller intends to accept that offer." Black's Law Dictionary 1325 (7th ed.1999).

Finally, the Solts argue that, because ODWU is not the record owner, the Law does not require it to receive actual notice. The Solts rely upon this Court's decision in *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 555 Pa. 722, 724 A.2d 936 (1998). In that case, the Farros had first lost their property to the Lavignes through a tax sale. The Farros filed a petition to set aside the sale, and the trial court agreed that the municipality had failed to comply with the notice provisions. The court directed the Farros to pay the purchase price of the property and the delinquent taxes and directed the Lavignes to execute a quitclaim deed. Lavigne's counsel delivered a quitclaim deed, requesting the deed be held in escrow until Lavigne was reimbursed for the money paid. The Lavignes authorized Farros' counsel to record the deed, but he failed to do so until three years later. The Farros failed to pay taxes for 1992 and years following. The Bureau held another tax sale and provided notice to the Lavignes as record deed holders. The Farros received no notice. The property was sold to S2M, owned by Lavignes' counsel, who admitted he acted as a straw man for the Lavignes in the sale. The court upheld the tax sale challenge of the Farros, noting that, although they were not the record holders, they did hold title by virtue of the unrecorded quitclaim deed. This Court followed the definition of the word "owner" in the Law and rejected the Farros' claim.

■ This case, involving a right of first refusal, is distinguishable from the *Donaldson* case, where the property interest involved was a vested reversionary interest in a fee simple. Under the Law, ODWU is not an owner and does not have an interest on par with a mortgagee or lien holder. Part of the Court's reasoning in *Donaldson* reflected concern for the constitutional issues the Ritenours raised. In this case, ODWU has nowhere suggested that the Law is unconstitutional for failure to provide a party holding a right of first refusal with standing to file exceptions. Further, the nature of a right of first refusal is limited by the terms of the right itself. ODWU has pointed to no case law suggesting that a right of first refusal creates a vested interest comparable to the interest found to be at issue in *Donaldson.* The right of first refusal in this case did not spring because of the involuntary nature of the sale——the Halamays did not "desire" to sell the property. Also, the contractual agreement applies by its terms only to the parties to the contract——the Halamays and ODWU. The bureau was not bound by the terms of the deed. The bureau was required to comply only with the provisions of the Law, which it did.

ODWU also relies upon language of Section 607.1 of the Law,[2] 72 P.S § 5860.607a, which states,

> When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder **or other person or entity whose property interests are likely to be significantly affected by such tax sale,** and such mailed notification is either returned without the required receipted personal signature ... or under other circumstances raising a significant doubt as to the actual receipt of such notification

---

**2.** Added by the Act of July 3, 1986, P.L. 351.

... the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.

(Emphasis added.)

ODWU contends that this provision means that the legislature intended that persons or entities with interests other than those specified elsewhere in the Law are entitled to actual notice. However, having already distinguished the right of first refusal from the type of property interest recognized in *Donaldson*, we need not delve any deeper into the argument. As discussed above, the right of first refusal is subject to the terms of the agreement, specifically a voluntary decision to sell on the part of the owner. Accordingly, we reject this argument.

ODWU lacks standing under the Law and cannot assert standing as a party in interest within the reasoning of *Donaldson*. Further, for the reasons discussed above, the right of first refusal contained in the deed did not entitle ODWU to actual notice of the tax upset sale. Accordingly, we affirm the sound decision of the trial court.

### ORDER

AND NOW, this 9th day of February 2006, the order of the Court of Common Pleas of Carbon County is affirmed.