EMAS, J.
 

 Arlene Pécora appeals from a final summary judgment determining that she was not entitled to exercise a right of first refusal in the sale, by a court-appointed receiver, of Signature Grand, a catering facility located in Broward County. We
 
 *29
 
 affirm, holding that, given the nature of the sale, and the express language of the agreement creating the right of first refusal, the trial court was correct in granting summary judgment.
 

 I. BACKGROUND
 

 Jerome C. Berlin (“Mr.Berlin”) and Michael Pécora (“Mr.Pecora”) each owned fifty percent of the shares of Deux Michel, Inc., the corporate general partner of Signature Gardens, Ltd. (“Signature Gardens”), and fifty percent of the shares of Grand Partners, Inc., the corporate general partner of Signature Grand, Ltd. (“Signature Grand”). Mr. Berlin and Mr. Pé-cora were also limited partners in both Signature Grand, Ltd. and Signature Gardens, Ltd. (collectively the “Signature Entities”). When both partners died in 2003, the Berlin Estate became owner of his fifty percent interest in the Signature Entities, and Arlene Pécora (“Mrs. Pécora”), as the surviving spouse of Mr. Pécora, became the owner of his fifty percent interest. In 2003, the personal representative for the Berlin Estate commenced an adversary proceeding seeking,
 
 inter alia,
 
 appointment of a receiver for, and dissolution of, the Signature Entities. Temporary receivers were in control of the Signature Entities since shortly after the deaths of Mr. Berlin and Mr. Pécora.
 

 a. Appointment of a Receiver
 

 In 2008, the Berlin Estate filed a motion for appointment of a single overall receiver for the Signature Entities, pending further proceedings in the adversary dissolution action. Following an evidentiary hearing in January 2009, the trial court appointed John Kozyak, Esq., as receiver for the Signature Entities. In doing so, the trial court made specific findings in a nineteen-page order, concluding that there existed a deadlock in the Signature Entities’ ownership and day-to-day management and that, without the appointment of a single receiver for the Signature Entities, there was imminent danger of damage to the businesses.
 

 The appointment order gave the receiver
 

 full authority to take such actions as may be necessary on behalf of the Signature entities pursuant to this Court’s order. The receiver shall maintain, where appropriate, the normal course of business of the entities, including entering into contracts; signing leases; purchasing goods; retaining, hiring, and firing staff and employees; and negotiating with companies and individuals whose relationships affect assets or the enterprise of the Receiver.
 

 The Receiver shall further have the full authority
 
 ...
 
 to operate, consolidate, merge, sell, abandon, or otherwise dispose of the Receivership assets; ... and such other acts as may be necessary to operate and protect the businesses.
 
 The Receiver shall operate the Receivership’s business in [his] or her best business judgment and act in the interest of those who own or have claims in the businesses.
 
 Where necessary, the Receiver may petition the Court for instructions on matters requiring judicial oversight and when the Receiver feels direction is needed about the propriety of certain contemplated acts.
 

 (emphasis added).
 

 Mrs. Pécora appealed the order appointing the receiver on jurisdictional grounds and this Court affirmed.
 
 Pecora v. Berlin,
 
 23 So.3d 727 (Fla. 3d DCA 2009).
 

 b. Signature Gardens
 

 Pursuant to its authority, the receiver
 
 *30
 
 listed Signature Gardens, Ltd.
 
 [1]
 
 (a catering facility located in Miami-Dade County) for sale and sought the trial court’s approval of the listing agreement. Mrs. Pécora objected to the listing agreement because it did not provide for a right of first refusal, a right which she claimed she was entitled to under the Signature Gardens Distribution Agreement.
 
 [2]
 

 Following a hearing at which the receiver testified that a right of first refusal would have a chilling effect on the listing and sale of the property, the trial court determined that Mrs. Pécora did not have a right of first refusal under the circumstances and approved the listing agreement and, ultimately, the sale of the Signature Gardens, Ltd. catering facility. That property was subsequently sold. Mrs. Pé-cora did not appeal the trial court’s determination, the order approving the listing agreement or the order approving the sale.
 

 c.
 
 Signature Grand
 

 Simultaneous with the marketing and sale of the Signature Gardens property, the trial court set a final hearing on the adversary action for dissolution of the Signature Entities. Soon thereafter, the parties agreed that the Signature Entities should be dissolved, and an order was entered which provided in pertinent part:
 

 The parties do not oppose a dissolution and a winding up of the business affairs of ... the Signature entities. The receiver for the Signature entities, John Kozyak, Esq.,
 
 shall continue to exercise the authority and powers previously vested in him as the court-appointed receiver,
 
 unless and until further order from this Court. Notwithstanding her lack of opposition to this motion, Arlene Pécora reserves and does not waive her objections to venue and jurisdiction,
 

 (emphasis added).
 

 The receiver initiated efforts to sell the Signature Grand catering facility and property located in Broward County. As with Signature Gardens, Mrs. Pécora maintained that she had a right of first refusal on any sale of Signature Grand assets pursuant to the terms of the Grand Partners, Inc. Agreement for Distribution (“Distribution Agreement”). Mr. Berlin and Mr. Pécora created this Distribution Agreement to establish a procedure by which the corporation would operate in the event of the death of one of the two partners, expressing their intent with the following language:
 

 WHEREAS, Berlin and Pécora believe that it is in their best interests and that of the Corporation to make provision for the smooth and efficient operation of the Corporation in the event of death of either Berlin or Pécora (upon the death of Berlin or Pécora such decedent is hereinafter referred to as a “Decedent”)....
 

 The Distribution Agreement thereafter made provisions for the transition and management of the day-to-day operations, as well as the sale of the corporation and its assets. The Distribution Agreement speaks in terms of a “Decedent” (the partner who dies) and a “Survivor” (the partner who survives).
 

 The Distribution Agreement provides that in the event of the death of either Mr. Berlin or Mr. Pécora
 

 
 *31
 
 the
 
 Survivor shall be obligated to market
 
 the Corporation’s assets and/or shares and the assets, or partnership interests, of the Partnership during the ten (10) year period following the death of either of them. In the event the
 
 Survivor has failed to consummate a sale
 
 of the Corporation and the Partnership within three (3) years of the date of death of a Decedent, the Personal Representative is hereby
 
 authorized to seek and procure a buyer
 
 for the assets and/or shares of the Corporation and Partnership
 
 giving the Survivor the right of first refusal
 
 on any offer received for the Decedent’s interest in the Corporation. In the event that
 
 a buyer is procured by the Survivor,
 
 the Personal Representative shall have a right of first refusal with respect to such offer,
 

 (emphasis added).
 

 d. Summary Judgment
 

 The receiver, on behalf of the Signature Entities, moved for summary judgment, requesting a determination by the trial court that Mrs. Pécora did not have a right of first refusal on a sale of the Signature Grand facility where the receiver was responsible for listing the property and procuring a buyer. At the conclusion of the hearing, the trial court entered its order of summary judgment, ruling,
 
 inter alia:
 
 that the right of Erst refusal under the Distribution Agreement did not apply to a sale procured by the receiver; that Mrs. Pécora had elected to proceed with the sale of assets through a dissolution and ■winding up of the Signature Entities, rather than through the sales process set forth in the Distribution Agreement; and that, by failing to appeal the trial court’s order Ending no right of first refusal in the sale of Signature Gardens, Mrs. Pécora waived, or was estopped from asserting, her right of first refusal in the sale of Signature Grand. We review the court’s ruling on a motion for summary judgment
 
 de novo. Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000).
 

 II. ISSUE PRESENTED
 

 The issue presented is whether the right of first refusal, encompassed within the Distribution Agreement, applies to a court-supervised sale procured by a court-appointed receiver, pursuant to a statutory dissolution of the Signature Entities. We hold that, under the facts of this case, the trial court was correct in its determination that the right of first refusal did not apply to a court-supervised sale procured by a court-appointed receiver in a statutory dissolution of the Signature Entities.
 

 III. DISCUSSION
 

 It appears that this question is one of first impression in Florida. Neither the parties nor this Court could find a Florida case directly addressing this specific issue. Decisions from other jurisdictions have considered the right of first refusal in similar circumstances, although there appears to be no case directly on point from any other state court.
 

 The cases from other jurisdictions which do provide guidance have focused on two factors: the voluntary or involuntary nature of the sale, and the express language of the agreement creating the right of first refusal.
 

 In
 
 Huntington National Bank v. Cornelius,
 
 80 A.D.3d 245, 914 N.Y.S.2d 327 (N.Y.App.Div.2010), New York’s Third Appellate Division determined that a right of first refusal was generally not triggered in the context of a foreclosure sale. Krieger purchased from Cornelius a one-half interest in an historic home and the two held the property as joint tenants.
 
 Id.
 
 at 328. As part of the transaction, the parties agreed that “should either party purchase
 
 *32
 
 the entire property and within twenty years thereafter offer it for sale, the other party has the option to purchase the property for $800,000 ...”
 
 Id.
 
 Cornelius ultimately purchased Krieger’s share of the property and later obtained a mortgage on the property. Thereafter, Cornelius failed to make payments and the mortgagee commenced a foreclosure action.
 
 Id.
 
 at 329. Krieger sought a declaration that his right of first refusal was superior to the mortgage and could be exercised at the foreclosure sale.
 

 The Third Appellate Division looked to the language of the agreement, and determined that the right of first refusal was not applicable because Cornelius was not the person who offered the property for sale.
 
 Id.
 
 at 330. Rather the referee, on behalf of the court, was the seller for purposes of the foreclosure action. The court also determined that “the word ‘offer’, as used here, was intended to cover a conscious and voluntary choice by the owner to make the property available for sale. No such choice exists here, however, as foreclosure is an involuntary process resulting in a forced sale.”
 
 Id.
 

 In
 
 Tadros v. Middlebury Medical Center, Inc.,
 
 263 Conn. 235, 820 A.2d 230 (2003), the Connecticut Supreme Court held that a right of first refusal, reserved to the grantor in a contract for the sale of realty, did not apply in the context of a foreclosure sale.
 

 The court first discussed the right of first refusal:
 

 A right of first refusal is known more technically as a preemptive option, as a right of preemption, or simply as a preemption. A right of pre-emption is a right to buy before or ahead of others; thus a pre-emptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specified terms, but, and this is the important point,
 
 only if the seller decides to sell.
 

 It does not give the pre-emptioner the power to compel an unwilling owner to sell, and therefore is distinguishable from an ordinary option.
 

 Thus, the purpose of a right of first refusal is not to allow the holder to compel the property owner to sell the property at a designated price, as may be the case with the existence of an option.... Rather, the purpose is to allow the holder of the right to be notified when the owner intends to sell, or has accepted an offer, which, in most cases, will be presumptively the fair market value of the property, and to allow the holder to purchase the property under identical terms.
 

 Id.
 
 at 234-35.
 

 The Connecticut Supreme Court then looked to the language of the contract creating the right, and concluded that the right of first refusal would be triggered only if (1) the grantees “form the intention” of selling the property, and (2) the grantees accept a bona fide offer to purchase the property.
 
 Id.
 
 at 235. The court determined that the right of first refusal was not triggered because:
 

 1. The court-appointed committee, and not the grantee, was the seller of the property.
 

 2. Because the sale was pursuant to a foreclosure, the sale was not voluntary, and the grantor had no intention to sell the property.
 

 3. The committee did not accept a bona fide written offer to purchase the property; rather the property was to be sold in accordance with a court order to conduct a foreclosure sale.
 

 Id.
 

 In the case of
 
 In re Rigby’s Estate,
 
 62 Wyo. 401, 167 P.2d 964 (1946), Rigby died
 
 *33
 
 intestate and the trial court appointed an administrator for the estate. The administrator obtained an appraisal of the estate’s real property and the court authorized the administrator to sell the property of the estate at a public or private sale to pay the debts and the expenses of administration and to distribute the remaining proceeds to the heirs.
 
 Id.
 
 at 965. One of the properties was subject to a lease. By its terms, the lease granted the lessees “the first right option and privilege of purchasing said lands, and any sale must be made subject to the terms of the above described lease.”
 
 Id.
 
 The lease further provided that “the lessees were to have the right of first refusal ‘on such terms as first party (Rigby) shall then demand for the purchase price.’ ”
 
 Id.
 
 at 968.
 

 The administrator conducted a public sale of the property and a third party was the successful bidder. The lessees sought a declaration by the court that the sale triggered their right of first refusal and that they were willing to purchase the property by matching the high bid offered at the public sale.
 
 Id.
 
 at 966. The trial court agreed that the lessees had a right of first refusal and ordered that the property be sold to the lessees. The Wyoming Supreme Court reversed, observing:
 

 The administrator is vested with no title to the real estate. His possession is for the purposes of administration. His authority to sell is not general, but special and limited, and can be exercised only for the purposes mentioned in the statute. He is not an agent of the heirs; does not derive his powers from them, and is not subject to their control. His possession of their property and sale thereof without their consent is in a sense hostile to their interests.
 

 [[Image here]]
 

 As it is clear that the administrator in selling the land for the purposes stated in the order of sale was not acting as the agent or with the consent of Rigby or his heirs, we must hold that the sale was not the voluntary sale at which Rigby intended to give the lessees the right of first refusal. It follows that the lessees had at the sale no preference over other bidders.
 

 Id.
 
 at 968, 969 (citations omitted).
 

 There are other cases which also analyze the voluntary or involuntary nature of the sale, together with the language of the agreement or other document creating the right, in determining whether an existing right of first refusal is triggered.
 
 See, e.g., Royal Oldsmobile Co. v. Heisler Props. L.L.C.,
 
 Case No. 10-CA-152, 58 So.3d 483 (La.App. 5th Cir.2010) (holding United States Marshal’s involuntary bankruptcy sale of property did not trigger right of first refusal);
 
 Central Exec. Comm. of ODWU, Inc., v. Carbon Cnty. Tax Claim Bureau,
 
 892 A.2d 868 (Pa.Commw.Ct.2006) (holding sale of property by county taxing authority to pay delinquent taxes did not trigger right of first refusal provision contained in deed);
 
 Benefit Realty Corp. v. City of Carrollton,
 
 141 S.W.3d 346 (Tex. App.2004) (holding right of first refusal only applied to a voluntary sale and taking of property by condemnation is involuntary; therefore, right of first refusal not triggered);
 
 Pearson v. Schubach,
 
 52 Wash. App. 716, 763 P.2d 834 (1988) (holding court-ordered sale of property to satisfy judgment against lessor was involuntary sale and did not trigger lessee’s right of first refusal since agreement required that lessor be a “willing” seller of the property);
 
 Henderson v. Millis,
 
 373 N.W.2d 497 (Iowa 1985) (holding given language in agreement, right of first refusal could not be exercised in context of a foreclosure sale);
 
 Draper v. Gochman,
 
 400 S.W.2d 545
 
 *34
 
 (Tex.1966) (same).
 
 [3]
 

 Applying the reasoning of the above cases to the instant case, we conclude that the receiver’s actions in procuring a sale of the corporation’s assets, pursuant to a receivership in a dissolution action, is more akin to a judicial or involuntary sale than it is to a voluntary sale by one of the owners of the property. This characterization is important, because a right of first refusal has been described as
 

 a right to elect to take specified property at the same price and on the same terms and conditions as those contained in a good faith offer by a third person
 
 if the owner manifests a willingness to accept the offer.
 
 The right of first refusal ripens into an option once an owner manifests a willingness to accept a good faith offer.
 

 Old Port Cove Holdings, Inc., v. Old Port Cove Condo. Ass’n One,
 
 986 So.2d 1279, 1285 (Fla.2008) (citing
 
 Pearson v. Fulton,
 
 497 So.2d 898, 900 (Fla. 2d DCA 1986)) (emphasis added).
 

 Thus the right of first refusal generally presumes a
 
 voluntary
 
 sale by an
 
 owner
 
 who manifests a willingness to accept an offer from a third party. By contrast, we are confronted here with a sale that is not truly voluntary; perhaps more significantly, it is not a sale in which the buyer is procured by the owner. Rather, it is a sale procured by a court-appointed receiver and is made under the supervision and authority of, and under terms prescribed by, the trial court.
 

 As discussed earlier, the express purpose of the Distribution Agreement was “to make provision for the smooth and efficient operation of the Corporation in the event of death of either [Mr.] Berlin or [Mr.] Pécora
 
 ....’’
 
 (emphasis added). The Distribution Agreement and, more specifically, the right of first refusal, did not envision the tragic situation which occurred here: both partners died on the same day, within hours of each other, resulting in an eventual deadlock over the management of the corporate affairs, a dissolution action, and an appointment of a receiver to manage and sell the corporate assets. Rather, the right of first refusal contemplated by its terms that:
 

 1. There would be a deceased partner and a surviving partner.
 

 2. Upon the deceased partner’s death, the surviving partner would be obligated to market and attempt to sell, the assets of the corporation.
 

 3. If the surviving partner did not sell the corporation and partnership within three years, the personal representative of the deceased partner was authorized to procure a buyer.
 

 4. In the event the deceased partner’s personal representative procured a buyer, the surviving partner would have a right of first refusal on any offer received for the deceased partner’s interest in the corporation.
 

 5. In the event the surviving partner procured a buyer, the deceased partner’s personal representative would have a right of first refusal on any offer received for the deceased partner’s interest in the corporation.
 

 Where, as here, it is the court-appointed receiver who procures a buyer, neither Mr. Berlin nor Mr. Pécora (nor their estates, heirs or personal representatives) is the
 
 *35
 
 “procuring” party as required by the terms of the Distribution Agreement.
 
 [4]
 

 IV. CONCLUSION
 

 The plain language of the Distribution Agreement compels a conclusion that the right of first refusal does not apply in a dissolution action where the court-appointed receiver is procuring the sale of the corporate assets. The receiver, not the survivor or the personal representative, is the procuring party, and the receiver’s actions are taken under the supervision, and with the approval, of the trial court. Had the parties to the Distribution Agreement intended for the right of first refusal to apply in the context of a corporate dissolution, or where a third party was procuring a buyer, the Distribution Agreement could have so provided.
 
 See, e.g., Roof Depot, Inc. v. Ohman,
 
 638 N.W.2d 782 (Minn.Ct. App.2002) (holding transfer restriction granted right of first refusal in event of voluntary or involuntary transfer of stock);
 
 Guice v. Sentinel Tech., Inc.,
 
 294 Ill. App.3d 97, 228 Ill.Dec. 483, 689 N.E.2d 355 (1997) (same).
 

 We conclude that, under these circumstances and in light of the language of the Distribution Agreement, the trial court correctly determined that Mrs. Pécora could not exercise a right of first refusal. The trial court properly granted summary judgment.
 

 Affirmed.
 

 [1]
 

 . Although this appeal does not involve the sale of the Signature Gardens property, some background is necessary to place the relevant events in their proper context.
 

 [2]
 

 . The Signature Gardens Distribution Agreement and the Signature Grand Distribution Agreement contain the identical provision regarding the right of first refusal. The right of first refusal provision is set forth in the discussion of Signature Grand,
 
 infra.
 

 [3]
 

 . We recognize that there is a minority position which holds that the right of first refusal can be exercised in the context of a judicial or involuntary sale.
 
 See, e.g., Cities Serv. Oil Co. v. Estes,
 
 208 Va. 44, 155 S.E.2d 59 (1967);
 
 Price v. Town of Rustan,
 
 171 La. 985, 132 So. 653 (1931). However, we conclude that the more well-reasoned position is that adopted by the majority of jurisdictions addressing the issue.
 

 [4]
 

 . If the Distribution Agreement were construed to permit the exercise of a right of first refusal to any offer procured by a receiver, both parties would be entitled to assert this right. This would beg the question: Who would have the "first” right of first refusal?