KEEPER'S, INC. *v.* ATGCKG REALESTATE, LLC
(AC 35022)

Beach, Sheldon and Dupont, Js.

Argued September 16—officially released November 26, 2013

*Jonathan J. Klein*, with whom, on the brief, were *John R. Bryk* and *William J. Varese*, for the appellant (plaintiff).

*Max S. Case*, for the appellee (defendant).

*Opinion*

DUPONT, J. In this contract dispute involving the terms of an "Agreement and Addendum to Lease," the plaintiff-tenant, Keeper's, Inc., appeals from the summary judgment rendered in favor of the defendant-landlord, ATGCKG Realestate, LLC.[1] The plaintiff claims that the defendant's failure to sell the leased property to the plaintiff after the defendant had received an unsolicited offer from a third party to buy that property constituted a breach of that agreement, which had established the plaintiff's right of first refusal. The trial court rendered summary judgment in favor of the defendant on the ground that the right of first refusal never

---

[1] ATGCKG Realestate, LLC, is the proper name of the defendant.

became operative because the defendant had no intent or desire to sell the leased premises.[2] On appeal, the plaintiff asserts that the court erred in deciding that there were no genuine issues of material fact as to: (1) whether the plaintiff's right of first refusal would only become operative upon the defendant's intent to sell the property;[3] and (2) whether the plaintiff's right to purchase, as worded in the lease, constituted a right of first refusal or "a unique, custom-crafted right to purchase." We conclude that the trial court properly determined that there was no genuine issue as to any material fact and that the defendant was entitled to judgment as a matter of law, and, thus, affirm the judgment of the trial court.

The resolution of the issues on appeal requires a brief review of the pleadings filed in this case and of the facts alleged in those pleadings. The plaintiff commenced the present action against the defendant on January 17, 2012, alleging breach of contract, and seeking monetary damages, attorney's fees, and specific performance of a right of first refusal for the sale and purchase of the leased property. The premises are described in all relevant documents as "Unit 1 and 2, Milford Business Center, 354 Woodmont Road, Milford, Connecticut" (property). On or about February 1, 1999, Anthony Gallo entered into a lease agreement for the property, as

[2] The court treated the language of the lease as granting a right of first refusal but stated that the language was "in-artfully" drawn. Nothing in the record or the trial court's memorandum of decision indicates that the "unsolicited" offer was rejected because the terms of the offer were not satisfactory. The court determined that the offer did not trigger the right of first refusal because the defendant had no desire to sell the leased property.

[3] The plaintiff also argues that the court erred in not finding that there were genuine issues of material fact as to whether the unsolicited offer to purchase the property was a bona fide offer as to price, terms of sale, and ability to perform. Because the defendant's lack of an intent to sell acts as the dispositive factor in the present appeal, we need not address any issues arising from the bona fides of the offer.

landlord, with 354 Woodmont Road, Inc., as tenant.[4] The lease was thereafter amended on April 3, 2003, in an Agreement and Addendum to Lease (amended lease).

Both the original lease and the amended lease included paragraph thirteen, which conferred upon the plaintiff what both parties refer to as a right of first refusal.[5] Paragraph thirteen states in relevant part: "If, during the term of the lease, or any renewal or extension thereof, landlord receives a written, bona fide offer to purchase the premises, landlord shall provide tenant with a copy thereof. Tenant shall have ten (10) days after receipt thereof to notify landlord that it elects to purchase the premises under the same terms and conditions as set forth in said offer, including, but not limited to, price, time for closing, financing contingencies. . . ."

On October 11, 2008, the defendant received an unsolicited written offer to purchase the property from Dean Moccia, an unrelated third party. The defendant rejected Moccia's offer. On October 21, 2008, the plaintiff gave the defendant written notice of its intent to "exercise its right of first refusal" by purchasing the property on the same terms and conditions as set forth in Moccia's offer.[6] The defendant also refused to sell the property to the plaintiff. As a result, the plaintiff

---

[4] The plaintiff is successor in interest to the original tenant, 354 Woodmont Road, Inc., while the defendant is successor in interest to Gallo, the original landlord. Both Gallo and his wife are members of the defendant LLC.

[5] The parties agree that paragraph thirteen of the amended lease governs the current dispute. The plaintiff attached paragraph thirteen, as amended, to its complaint, claiming it to be the source of its right of first refusal. That provision in the amended lease is identical to paragraph thirteen in the original lease except that the amended lease adds sentences that relate to the possibility of a sale to a person or entity related to the lessor. See footnote 10 of this opinion.

[6] It is unclear from the record precisely how the plaintiff learned of Moccia's offer. There is no dispute, however, that such an offer was in fact made. The plaintiff argues that the only condition precedent to its right of first refusal to purchase is that the unsolicited offer be bona fide.

commenced the present action to compel specific per-
formance by seeking to mandate the sale of the property
to it, pursuant to its claimed "right of first refusal" under
paragraph thirteen of the amended lease. Without filing
an answer to the plaintiff's complaint, the defendant
filed a motion for summary judgment, pursuant to Prac-
tice Book § 17-44, claiming that the right of first refusal
in the amended lease could only be exercised after the
defendant offered the property for sale.[7] Because it had
never offered to sell the property, the defendant argued
that the right of first refusal had not been triggered,
and that, therefore, it was not obligated to sell to the
plaintiff.[8] Following oral argument, the trial court
granted the defendant's motion for summary judgment
on August 30, 2012, finding that no genuine issue of
material fact existed as to whether the defendant had
any intent or desire to sell the property. Without an
intent or offer to sell the property, the court concluded
that the right of first refusal had not become operative
as a matter of law.[9]

"Our standard of review is well established. Practice
Book § 17-49 provides that summary judgment shall be
rendered forthwith if the pleadings, affidavits and any
other proof submitted show that there is no genuine
issue as to any material fact and that the moving party
is entitled to judgment as a matter of law. In deciding
a motion for summary judgment, the trial court must

---

[7] The fact that the defendant had not yet filed its answer to the plaintiff's
complaint is of no consequence. Practice Book § 17-44 expressly provides
that a motion for summary judgment may be filed "at any time . . . ."

[8] Although the record reflected some prior correspondence between the
plaintiff and the defendant concerning a potential sale of the property to
the plaintiff, those negotiations are not relevant to the current dispute
because they occurred in 2006, two years before Moccia's offer in October,
2008, and are not indicative of any intent to sell at the time of Moccia's
offer, or to sell to anyone other than the plaintiff.

[9] The court noted that the plaintiff claimed that the defendant's receipt
of an offer to purchase was enough to trigger the plaintiff's right of first
refusal but that such a position was not legally supported.

view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a] . . . motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bridgeport* v. *White Eagle's Society of Brotherly Help, Inc.*, 140 Conn. App. 663, 667–68, 59 A.3d 859 (2013).

I

The plaintiff first argues that the court improperly determined that there was no genuine issue of material fact as to the effect of Moccia's offer on the right of first refusal in the lease. In support of that argument, the plaintiff specifically contends that the court incorrectly decided that the plaintiff's right to purchase the property could only take effect if the defendant decided to sell that property. The plaintiff's claim is without merit.

In its complaint, the plaintiff sought specific performance of the terms of paragraph thirteen of the amended lease. Specifically, the plaintiff argued that "[u]nder the terms of Paragraph 13 of the Agreement and Addendum to Lease, the Plaintiff has a Right of First Refusal with respect to any offer to purchase the premises. . . ."[10] The defendant argues that the right

[10] It is important to note that paragraph thirteen of the amended lease contains two additional sentences that were not quoted in the trial court's memorandum of decision granting the defendant's motion for summary judgment. The sentences were not included in the original lease, but were added by the Agreement and Addendum to the lease in 2003. The additional sentences of paragraph thirteen provide: "Notwithstanding the foregoing, the terms and provisions of this paragraph shall not apply to any sale or other conveyance of the premises to any of landlord's family members (as hereinafter defined), trusts for their benefit and/or a corporation, partnership

of first refusal can only become operative if the owner of the real estate has a desire or intent to sell, even if the owner has received a bona fide offer to purchase. Case law, as hereinafter discussed, establishes that a right of first refusal cannot become operative unless the owner intends to sell the real estate in question.

A "right of first refusal" has been defined and distinguished in many treatises and reported decisions. "A right of first refusal, or first right to buy, is not a true option but is a valuable prerogative. It limits the right of the owner to dispose freely of its property by compelling the owner to offer it first to the party who has the first right to buy. Nor may the owner accept an offer made by a third party." 25 R. Lord, Williston on Contracts (4th Ed. 2002) § 67:85, p. 502. Throughout the trial court proceedings, both parties characterized paragraph thirteen of the amended lease as the plaintiff's right of first refusal. Although on appeal the plaintiff now contends that paragraph thirteen is not a right of first refusal at all but a "unique, custom-crafted right to purchase," the plaintiff itself repeatedly referred to paragraph thirteen throughout trial court proceedings as a "Right of First Refusal," including in the plaintiff's complaint, in its memorandum in opposition to summary judgment, and in its supporting affidavits. The court therefore determined, as a matter of law, that the

---

and/or limited liability company wherein the landlord or a family member has at least a fifty one (51%) percent ownership interest. The grantees of such a sale or other conveyance shall take subject to tenant's *right of first refusal* for any subsequent sale or conveyance. Family members are defined as landlord's spouse and/or issue." (Emphasis added.) No evidence was proffered at the time of the defendant's motion for summary judgment or in oral argument regarding that motion indicating that there had been any such sale or conveyance to a member of the defendant's family, and therefore, this quoted provision of paragraph thirteen did not apply to the present facts. On appeal, however, the plaintiff argued that the term "right of first refusal" mentioned in the additional sentences of paragraph thirteen, also impliedly applied to the plaintiff's right of first refusal in the first portion of that same paragraph.

plaintiff's rights, contained in paragraph thirteen of the lease, constituted a right of first refusal.

In its memorandum of decision, the court, treating paragraph thirteen as a right of first refusal, determined that because no genuine issue of material fact existed as to the defendant's lack of a desire to sell, any right of first refusal in the lease had not become operative. The court stated that "[w]hile this matter concerns the interpretation of an in-artfully drawn right of first refusal, there is no issue of fact regarding whether the defendant intended to sell the disputed property." (Footnote omitted.) The court concluded that "[s]ince it is undisputed that the defendant only received an offer on its property and did not display any desire or willingness to sell, as a matter of law, the right of first refusal is not operative." We agree with the court.

The court's emphasis on the defendant's lack of a willingness to sell is well supported by our Supreme Court jurisprudence. In *Tadros* v. *Middlebury Medical Center, Inc.*, 263 Conn. 235, 820 A.2d 230 (2003), the court stated that "[a] right of first refusal is known more technically as a preemptive option, as a right of preemption, or simply as a preemption. A right of [preemption] is a right to buy before or ahead of others; thus, a [preemptive] right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specified terms, but, and this is the important point, *only if the seller decides to sell.* It does not give the preemptioner the power to compel an unwilling owner to sell, and therefore is distinguishable from an ordinary option." (Emphasis in original; internal quotation marks omitted.) Id., 240–41; see also *Peter-Michael, Inc.* v. *Sea Shell Associates*, 244 Conn. 269, 273–74 n.5, 709 A.2d 558 (1998) ("An option to purchase ordinarily grants the tenant an absolute right to purchase leased property. A right of first refusal, also

known as a preemptive option, confers upon the tenant a preferential right of purchase if the landlord decides to sell the leased property. . . . A right of [preemption] is a right to buy before or ahead of others . . . but . . . only if the seller decides to sell." [Citation omitted; internal quotation marks omitted.]); 25 R. Lord, supra, § 67:85, pp. 503–504 ("[t]he 'right of first refusal' or 'preemption' is conditioned upon the willingness of the owner to sell; it can be enforced by specific performance where such willingness can be proved" [footnote omitted]).[11] An owner's intent to sell acts as a condition precedent to the plaintiff's right of first refusal. See 25 R. Lord, supra, § 67:85, p. 502 (distinguishing rights of first refusal and options: "an option must be accepted and then performed within the time limit specified, or if none is mentioned, then within a reasonable time, whereas a right of first refusal has no binding effect unless the offeror decides to sell").

The court considered the pleadings, motions, and affidavits submitted by both parties and determined that there was no issue as to the material fact, namely, that the defendant did not intend to sell the property. On the basis of our extensive review of the same pleadings,

---

[11] Other jurisdictions also follow this same view. See *New York Tile Wholesale Corp.* v. *Thomas Fatato Realty Corp.*, 13 App. Div. 3d 425, 427, 787 N.Y.S.2d 341 (2004) ("A right of first refusal, as distinguished from an option, does not give its holder the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the party holding the preemptive right so that he may meet a third-party offer or buy the property at some other price set by a previously stipulated method. . . . The right of first refusal is violated only when the landowner sells the property without first offering the optionee the right to match the purchase offer." [Citations omitted; internal quotation marks omitted.]); see also *Park-Lake Car Wash, Inc.* v. *Springer*, 352 N.W.2d 409, 411 (Minn. 1984) ("The right-of-first-refusal provision in the lease is similar to an option contract. The difference is that the right of first refusal requires a condition precedent before it may be exercised. . . . The condition precedent is that the owner must have received a bona fide offer from a third party which he or she is willing to accept." [Citation omitted.]).

motions, and affidavits, we agree with the court. Because a right of first refusal cannot be enforced without an intent or desire to sell, the defendant was entitled to summary judgment.

## II

The plaintiff also argues, alternatively, the plaintiff's right to purchase the property, as worded in the amended lease, constituted a "unique, custom-crafted right to purchase." Although the plaintiff repeatedly referred to paragraph thirteen as a right of first refusal throughout the trial court proceedings, it now asserts that paragraph thirteen is not a right of first refusal at all, but instead, an atypical right to purchase. As such, the plaintiff contends that the court should have evaluated the defendant's motion for summary judgment in light of the actual language of paragraph thirteen and not as a traditional right of first refusal.[12] We are not persuaded. It is the plaintiff, not the court, that characterized paragraph thirteen of the amended lease as granting the plaintiff a right of first refusal.

"In construing the terms of a lease, the court is required to give the document's language its common and generally accepted, or plain and ordinary meaning, unless a technical or special meaning is clearly intended. . . . If the language used in a lease is technical or constitutes terms of art, the general rule is that such language is to be given its common technical meaning . . . ." (Footnotes omitted.) 49 Am. Jur. 2d 92–93,

---

[12] In relevant part, the plaintiff argues that "the trial court's fixation on categorizing the Plaintiff's right to purchase the [property] as a 'right of first refusal' led it to misplace its focus on the Defendant's intentions regarding the sale of the [property], rather than on Moccia's bona fides in offering to purchase it. The characterization of the Plaintiff's perhaps atypical right to purchase, in and of itself raises genuine issues of material fact as to whether that right actually constituted a right of first refusal, an option, or something else unique. The complete disregard of these genuine issues of material fact is fatal to the summary judgment."

Landlord and Tenant § 49 (2006). A phrase is a legal term of art if it has "acquired a peculiar and appropriate meaning in the law requiring it to be construed and understood accordingly. . . . Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense." (Citation omitted; internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 689, 41 A.3d 1013 (2012); see also Black's Law Dictionary (9th Ed.) (defining "term of art" as "[a] word or phrase having a specific, precise meaning in a given specialty").

On the basis of the evidence before it, the court correctly determined as a matter of law that the relevant language in paragraph thirteen constituted a right of first refusal, albeit an "in-artfully drawn" one. As we addressed with respect to the plaintiff's first claim, what constitutes a "right of first refusal" has been well defined. Specifically, our Supreme Court has established that a right of first refusal, by its definition, is conditioned upon the owner's willingness to sell. An owner's intent to sell is a prerequisite to the operation of a right of first refusal.[13] Accordingly, we conclude that the phrase "right of first refusal" as used by both parties in their pleadings and in the amended lease itself, constitutes a term of art with a fixed legal meaning, and that the court's conclusion that the right of first refusal had not become operative because the defendant never intended to sell was legally correct. The specific language used in paragraph thirteen to allow the plaintiff to claim a "unique, custom-crafted

---

[13] The plaintiff's argument that it was entitled to buy the premises if the offer to buy was bona fide is not determinative of the plaintiff's right to buy at the same price offered. An offer can be monetarily adequate, with the prospective buyer ready, willing and able to buy, without influencing or causing the owner to sell. For example, the owner could desire to keep the title to the property in the family for sentimental reasons, allowing future generations to enjoy it, or because the owner, even inexplicably, loved living or visiting there.

right to purchase," instead of a right of first refusal, does not alter this analysis. Without the defendant's intent to sell, the plaintiff could not acquire a right to buy.

The judgment is affirmed.

In this opinion the other judges concurred.