J-A06028-18

2018 PA Super 92

| CITIMORTGAGE, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| VINCENT A. COMINI | : | |
| | : | |
| | : | |
| APPEAL OF: PAUL F. FALETTO AND | : | |
| SHARON A. FALETTO | : | No. 1284 WDA 2017 |

Appeal from the Order August 7, 2017
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  No. 2082 of 2012

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER*, J.

OPINION BY SHOGAN, J.:                                    **FILED APRIL 20, 2018**

Paul F. Faletto and Sharon A. Faletto (collectively, "the Falettos") appeal from the order denying their petition to intervene following a mortgage foreclosure action filed by Citimortgage, Inc. ("Citimortgage") against Vincent A. Comini ("Comini") and granting Citimortgage's petition for a corrected deed.  We reverse in part and affirm in part.

Citimortgage filed a mortgage foreclosure action against Comini on April 2, 2012, related to his residence at 135 Buffalo Hill Road, Irwin, Pennsylvania (the "Property").  A default judgment was entered on July 25, 2012, and Citimortgage filed a writ of execution on September 14, 2012. After Citimortgage complied with the notice requirements, it purchased the Property at Sheriff's Sale on March 7, 2016, and a deed was recorded on April 22, 2016.

_____
*   Retired Senior Judge assigned to the Superior Court.

Pursuant to Pa.R.C.P. 3135(b), Citimortgage filed a petition on January 27, 2017, seeking correction of the April 22, 2016 deed, which contained language granting a right of first refusal ("ROFR") to the Falettos. The ROFR reads as follows:

> SHOULD Grantee [Comini] wish to sell the property the subject hereof or any part of it, Grantee shall first offer in writing to sell the property to Paul F. Faletto and Sharon A. Faletto, his wife, who shall have 10 days to accept said offer.

Petition for Correction of Sheriff's Deed, 1/27/17, at Exhibit A. The ROFR was in the original deed recorded on July 21, 1992, whereby the Falettos conveyed the Property to Comini and his wife, Kathleen. The ROFR also appeared in the deed recorded on February 27, 2009, whereby Kathleen Comini transferred her interest in the Property to Comini. The ROFR was not included in the legal description of Comini's mortgage with Citimortgage.

Upon receiving a copy of Citimortgage's petition for a corrected deed, the Falettos presented the trial court with a petition to intervene on April 21, 2017, seeking to preserve their ROFR. The trial court conducted a hearing on June 1, 2017. On June 9, 2017, the trial court denied the petition to intervene and granted Citimortgage's petition for a corrected deed. The Falettos sought reconsideration, which the trial court granted on July 7, 2017. Following oral argument on July 24, 2017, the trial court again denied the Falettos' petition to intervene and affirmed its grant of Citimortgage's petition. Order, 8/7/17. This appeal followed. The Falettos and the trial court complied with Pa.R.A.P. 1925.

- 2 -

The Falettos raise two issues for our consideration:

1. Whether the lower [c]ourt erred in denying [the Falettos] the right to be permitted to intervene to object to the removal of their right of first refusal from [Citimortgage's] deed.

2. Whether the lower [c]ourt erred in granting approval to [Citimortgage] to remove the right of first refusal of [the Falettos] from [Citimortgage's] deed.

The Falettos' Brief at 4.

The Falettos first argue that the trial court erred in denying their petition to intervene. Relying on the bases for allowing intervention set forth in Pa.R.C.P. 2329, the Falettos assert: (1) their request to secure the ROFR does not speak to the underlying foreclosure action; (2) their interest is not adequately represented because they were not party to the foreclosure action; and (3) they acted promptly after Citimortgage served them with a copy of its petition for a corrective deed, given the fact that they did not receive notice of the Sheriff's Sale. The Falettos' Brief at 11; N.T., 6/1/17, at 25. Citimortgage responds that "the Falettos incorrectly focus on [Pa.R.C.P.] 2329, which sets forth reasons a court may deny an otherwise proper Petition to Intervene. . . . Nevertheless, the trial court found that the Falettos failed to meet the threshold requirements to qualify for intervention under Rule 2327." Citimortgage's Brief at 15 (internal citations omitted).

The trial court observed that Comini's mortgage did not include the ROFR language and Citimortgage was not required to name the Falettos in the mortgage foreclosure action because they were not real owners under

- 3 -

Pa.R.C.P. 1144 (Parties. Release of Liability). Trial Court Opinion, 10/3/17, at 5. The trial court also found that the Falettos did not seek to intervene prior to entry of the default judgment in favor of Citimortgage on July 25, 2012, as required by Pa.R.C.P. 2327. **Id.**

"Whether to allow intervention is a matter vested in the discretion of the trial court and the court's decision will not be disturbed on appeal absent a manifest abuse of its discretion." **U.S. Bank Nat'l Assoc. for PA Hsg. Fin. Agency v. Watters**, 163 A.3d 1019, 1024 (Pa. Super. 2017). As for which rule of civil procedure applies, we agree with Citimortgage that only Pa.R.C.P. 2327 governs this matter, specifically, Pa.R.C.P. 2327(4):

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> * * *
>
> (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

The Falettos' ROFR is an interest legally enforceable pursuant to "standard principles of contract construction." **E.R. Linde Const. Corp. v. Goodwin**, 68 A.3d 346, 349 (Pa. Super. 2013). Consequently, the Falettos have the right to intervene pursuant to Pa.R.C.P. 2327(4). Furthermore, the Falettos' petition was timely because they filed it while Citimortgage's case for correcting the sheriff's sale deed by removing the ROFR was ongoing. Thus, we conclude that the trial court abused its discretion in denying the

Falettos' petition to intervene, and we reverse that ruling. However, we need not remand to allow the Falettos to intervene for two reasons. First, they had an opportunity to argue the merits of their position at the July 24, 2017 hearing. Second, as discussed below, their argument against Citimortgage's request for correction of the deed lacks merit.

The Falettos' second issue challenges the trial court's decision to grant Citimortgage's petition for a corrected deed. According to the Falettos, the foreclosure action did not affect their ROFR because it is not a judgment, lien, or other encumbrance on the Property, "which are not protected by statute from discharge." The Falettos' Brief at 14 (citing 42 Pa.C.S. § 8152 (Judicial sale as affecting lien of mortgage)). The Falettos maintain that their ROFR is "a valid condition on the title" of which Citimortgage had notice. *Id.* at 15. Recognizing that they cannot forestall any sale of the Property, the Falettos "want the opportunity to repurchase" the Property when there is a voluntary sale by Citimortgage. *Id.* at 17.[1]

Citimortgage counters:

> The ROFR does not affect the use of the land, it affects [Comini's] personal ability to sell the land; the covenant is simply a limited restriction on [Comini's] right of alienation. The

---

[1] The record reveals that Housing and Urban Development ("HUD") insured the underlying mortgage. Pursuant to its agreement with HUD for reimbursement of Citimortgage's losses and expenses, Citimortgage was required to convey clear title to HUD. In order to convey clear title, Citimortgage sought removal of the ROFR from the Sheriff's deed. Upon receipt of clear title, HUD would sell the Property. N.T., 6/1/17, at 9–11.

> Deeds do not contain restrictions on [Comini's] ability to mortgage the Property or restrictions on future owners of the Property. The reciprocal ROFR granted to [Comini] likewise illustrates the contractual nature of the ROFRs. The bargained-for exchange between [Comini] and the Falettos included reciprocal ROFRs, and neither Citimortgage nor its predecessor [was] a party to that agreement.

Citimortgage's Brief at 11. Additionally, Citimortgage points out that "[n]either the Mortgage nor the Complaint contain[s] the ROFRs and therefore the Sheriff's Deed contained an 'erroneous description of the Property' relative to this mortgage foreclosure action." *Id.* at 13.

Here, the trial court concluded that, because "the Falettos lacked standing, were not proper [d]efendants, and were not timely in their Petition to Intervene, [Citimortgage], as purchaser of the [Property] at Sheriff's Sale, was permitted to request the corrected deed." Trial Court Opinion, 10/3/17, at 5–6. The trial court based its grant of Citimortgage's petition on two factors: (1) the language of the ROFR limited activation of the right to a voluntary sale of the property, and a mortgage foreclosure was not a voluntary sale; and (2) the ROFR agreement was between Comini and the Falettos; Citimortgage was not party to that agreement. *Id.* at 4. In support of its decision, the trial court referred to *Cent. Exec. Com. of ODWU, Inc. v. Carbon Co. Tax Claim Bureau*, 892 A.2d 868 (Pa. Cmwlth. 2005), for guidance. Therein, our sister court held that a claimant who held a ROFR did not have standing to object to a tax sale. *Id.* at 872.

This Court has defined a ROFR, otherwise known as the right to preemption, as follows:

> A right of first refusal constitutes a promise to offer the *res* of the right to the promisee for such consideration as the promisor determines to accept on the basis of an offer from a third party before accepting the offer of the third party. A right of first refusal does not require the promisor to offer the *res* at all. The right of first refusal merely requires that before the promisor accepts an offer of a third party, the promisor must offer the *res* to the promisee of the right for the consideration the promisor is willing to accept from the third party.

***Power Gas Mktg. & Transmission, Inc. v. Cabot Oil & Gas Corp.***, 948 A.2d 807, 810 (Pa. Super. 2008) (citations and internal brackets omitted).

The ***Power Gas*** Court explained the history of rights of first refusal:

> Over 150 years ago, our Supreme Court reached the following conclusion with respect to what have subsequently come to be defined as rights of first refusal: "Where a lessor has stipulated with his lessee, in the lease, that when the land was offered for sale, the first offer shall be made to the lessee upon terms as favorable as are offered to any other person, this stipulation gives to the lessee **no title to or interest in the land, and creates only a personal obligation**." ***Elder v. Robinson***, 19 Pa. 364, 366 (1852). This language seemingly defines a right of first refusal as being "**exclusively contractual**." ***SEPTA***, *supra* at 20 (citation omitted). This statement of the law was later cited with approval by our Supreme Court in ***Driebe v. Fort Penn Realty Co.***, 331 Pa. 314, 200 A. 62 (1938).

***Id.*** at 811 (emphases supplied). The ***Power Gas*** Court reiterated that a ROFR does not create an interest in land:

> A true right of first refusal does not vest the promisee with any ability to control when the *res* subject to the right will be alienated or under what terms such alienation will occur. A right of first refusal places no restriction on the promisor's ability to

- 7 -

alienate the *res* at market value. Thus, a right of first refusal is neither akin to an option which by its very nature prevents the optionor from freely alienating the property subject to the option, nor is it akin to a trust condition that prohibits a beneficiary from freely alienating the *corpus* of a trust. Rather, when a right of first refusal is at issue it is the owner of the property—the promisor—who decides when and how to alienate the *res* and not a third party, such as an optionee or settlor. Given the lack of privileges and incidents the holder of a right of first refusal has over the *res*, it is difficult to argue that a right of first refusal ever concerns a propertied estate.

*Id.* at 815 (internal citations omitted).[2]

Notwithstanding the Commonwealth Court's decision in ***Cent. Exec. Com. of ODWU*** and our ***Power Gas*** decision, we observe that the question of whether a ROFR survives a foreclosure action is an issue of first impression in Pennsylvania. However, courts in other jurisdictions have analyzed the involuntary nature of a foreclosure sale, together with the language of the agreement creating the right, in determining that an existing ROFR was not triggered.[3] ***See Woodburn v. Rock Solid Ventures, LLC***,

---

[2] In ***Power Gas***, we held that a ROFR regarding oil and gas leases created an exclusively contractual right and was not subject to the rule against perpetuities because it "does not function as 'an impress of land' nor does it 'fetter *specific* property'." ***Power Gas***, 948 A.2d at 818.

[3] Appellate courts in other jurisdictions have taken the same approach in non-foreclosure cases. ***See, e.g.***, ***Pecora v. Berlin***, 62 So.3d 28 (Fl. Third Dis. 2011) (holding that a spouse's ROFR under the terms of a partnership dissolution agreement did not apply to the statutory dissolution of a limited partnership); ***Royal Oldsmobile Co. v. Heisler Props. L.L.C.***, 58 So.3d 483 (La. App. 5th Cir. 2010) (holding United States Marshal's involuntary bankruptcy sale of property did not trigger ROFR); ***Benefit Realty Corp. v. City of Carrollton***, 141 S.W.3d 346 (Tex. App. 2004) (holding that ROFR
*(Footnote Continued Next Page)*

882 N.W.2d 872 (Wis. App. 2016) (reviewing the language of the agreement creating the right, the court held that the ROFR did not apply to a foreclosure sale); **Huntington National Bank v. Cornelius**, 914 N.Y.S.2d 327 (N.Y. App. Div. 2010) (explaining that a ROFR was not triggered in the context of a foreclosure sale because the referee was the seller for the purposes of the foreclosure action; the word 'offer' was intended to cover a conscious and voluntary choice by the owner to make the property available for sale; and a foreclosure is an involuntary process resulting in a forced sale); **Tadros v. Middlebury Medical Center, Inc.**, 263 Conn. 235, 820 A.2d 230 (2003) (holding that a ROFR did not apply in the context of a foreclosure sale because (1) the court-appointed committee was the seller of the property; (2) the sale was pursuant to a foreclosure and, therefore, not voluntary; and (3) the committee did not accept a *bona fide* written offer to purchase the property; rather the property was to be sold in accordance with a court order to conduct a foreclosure sale); **Ricketson v. Bankers First Sav. Bank, FSB**, 503 S.E.2d 297 (Ga. App. 1998) (holding that ROFR agreement did not encumber the land as it was merely contractual and

*(Footnote Continued)* ————————————

only applied to a voluntary sale and taking of property by condemnation is involuntary); **Pearson v. Schubach**, 763 P.2d 834 (Wash. App. 1988) (holding that court-ordered sale of property to satisfy judgment against lessor was involuntary sale and did not trigger lessee's ROFR because agreement required that lessor be a "willing" seller of the property); **In re Rigby's Estate**, 167 P.2d 964 (Wyo. 1946) (holding that court-ordered sale of property by estate administrator to a third party was not a voluntary sale that triggered the lessee's ROFR).

personal to the parties; therefore, the ROFR did not affect the involuntary foreclosure sale by Bankers First to the third party); *Henderson v. Millis*, 373 N.W.2d 497 (Iowa 1985) (holding that, given language in the agreement, a ROFR could not be exercised in context of a foreclosure sale); *Draper v. Gochman*, 400 S.W.2d 545 (Tex. 1966) (giving the words "desires to sell" their ordinary meaning, the court held that the phrase does not include an involuntary sale on the foreclosure of a mortgage).

Applying the rationale of the above cases to the case at hand, we conclude that the Falettos' ROFR did not survive Citimortgage's foreclosure action. A ROFR is created by contract and, as such, is personal to the contracting parties; it is not a covenant that runs with the land. *Power Gas*, 948 A.2d at 811. Therefore, contrary to the Falettos' position, the ROFR does not "bind[] everybody in the future to that same contract." N.T., 6/1/17, at 10. Moreover, the agreement between Comini and the Falettos provides that the Falettos' ROFR would be activated **if and when** Comini desired to sell the Property. "Sale" of property contemplates a vendor and a buyer, and the voluntary transfer involves payment or promise to pay a certain price in money or its equivalent. *Mericle v. Wolf*, 562 A.2d 364 (Pa. Super. 1989). In the foreclosure action, Comini was not the seller of the Property, and the Sheriff's Sale was not a voluntary transfer of the Property; therefore, Citimortgage's foreclosure action did not trigger the Falettos' ROFR. Consequently, the record does not warrant inclusion of the

ROFR in the Sheriff's deed. Accordingly, we discern no abuse of discretion or error of law in the trial court's conclusion that Citimortgage was entitled to a corrected deed.

Order reversed in part and affirmed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2018