IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Atwater Kent Museum a/k/a     :
Philadelphia History Museum         :
at The Atwater Kent                :     No. 1042 C.D. 2022
                               :
Appeal of: The Historical Society of    :     Argued: November 9, 2023
Pennsylvania                    :


BEFORE:     HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER Judge
                 HONORABLE LORI A. DUMAS, Judge

OPINION BY
JUDGE DUMAS                            FILED: December 19, 2024

The Historical Society of Pennsylvania (Society) appeals from the order entered in the Court of Common Pleas of Philadelphia County, Orphans' Court Division (orphans' court) denying the Society's second petition to intervene with prejudice. The City of Philadelphia (City) and Pennsylvania Office of Attorney General (AG) (collectively, Appellees) oppose intervention. On appeal, the Society contends it is entitled to intervene. We deny the City's application to quash and affirm.

## I. BACKGROUND[1]

In the early 20th century, a charitable organization acquired property and offered to convey it to the City. In exchange, "the City would agree to establish and maintain a museum in the building." Orphans' Ct. Op., 8/1/22, at 1. The City agreed, passed an ordinance accepting the organization's offer, and executed the

---

[1] We state the facts as presented by the orphans' court opinion to the extent they "are supported by competent and adequate evidence." *In re Est. of Plance*, 175 A.3d 249, 259 (Pa. 2017). We use the Pa.R.Civ.P. 236 dates, may refer to a decree as an order, and may interchangeably use the term "instrument" with "terms of a trust." *See* Act of July 15, 2024, P.L. 64 (amending the Uniform Trust Act (Act), 20 Pa.C.S. §§ 7701-7799.3).

indenture of trust. *Id.* at Exs. A, B (instrument).[2] The museum was to be named the Atwater Kent Museum, also known as the Philadelphia History Museum at the Atwater Kent (Museum). The Museum would display the organization's artifact collection (Collection).

The instrument provides that the City would finance the "supervision, maintenance, upkeep and extension" of the Museum and building. *Id.* at Ex. A. The instrument also established a board of trustees (Trustees) to manage the "custody, care and management of the" Museum. *Id.* At that time, the instrument provided that the Society, among others, could each appoint one trustee. In 1994, however, the instrument was amended to omit the Society. *Id.* at Ex. C.

The instrument also states that "voluntary contributions, gifts, donations, legacies, devices or bequests may be received" by the Museum. *Id.* at Ex. A. Further, the Museum would comply with any conditions attached to any gift or donation. The instrument does not identify any beneficiaries. *See id.*

Separately, the Society accumulated a collection of artifacts. In 2009, the Society executed a contract conveying title to its collection to the Museum's Collection. The Society "irrevocably and unconditionally" transferred to the Museum "all of the Society's right, title, and interest . . . in and to the" Society's collection subject to three conditions.[3] *Id.* at Ex. F.; *see also* Pet. to Deviate, 8/27/21, ¶ 25 (no reversionary title to the collection). First, before the Museum sold any of the Society's former artifacts, the Museum must timely notify the Society and seek its advice. Second, the parties would split the proceeds if the Museum sold any of

---

[2] The parties generally agree that the trust indenture, *i.e.*, deed of trust, was the instrument. Soc'y's Br. at 2; City's Br. at 17; AG's Br. at 6 n.2.

[3] In 1999, the Society and the Museum had executed a contract in which the Society lent nearly its entire collection to the Museum for 10 years. In 2009, the Society and Museum amended the 1999 contract to transfer title of the loaned artifacts to the Museum.

the Collection. Third, the Museum would acknowledge the Society's former ownership.

A few years later, the Museum's finances compelled the Trustees to explore a partnership with Drexel University (Drexel), which was receptive to replacing the Trustees. Accordingly, the City, through the Trustees, filed a petition to deviate[4] to facilitate Drexel's substitution. The City requested, *inter alia*, a decree that the City could execute a contract with Drexel transferring title to the Collection from the Museum to Drexel. Pet. to Deviate (order).

The Society petitioned to intervene, asserting it was a trust beneficiary and had a "substantial, direct, and immediate" interest in the City's petition to deviate. Pet. to Intervene, 1/19/22, ¶¶ 39, 41-42. The Society alternatively reasoned that because it has a "special interest" in the trust, it could seek to enforce the trust. *Id.* ¶ 44 (cleaned up). Following a February 2022 hearing, the court denied relief, and the Society did not appeal. Order, 3/3/22; Orphans' Ct. Op. at 5-6.

The Society filed a second petition to intervene, which referenced testimony presented at the February 2022 hearing and the proposed Drexel contract, but otherwise generally mirrored its initial petition. *See* Second Pet. to Intervene, 4/7/22. The court held a hearing, at which the City successfully objected to the Society's attempt to call two witnesses. Orphans' Ct. Op. at 7-8; Notes of Testimony (N.T.), 4/27/22, at 11-12. The court denied the Society's petition with prejudice and later granted the City's petition to deviate. Order, 5/2/22; Order, 5/4/22. The Society timely appealed from the order denying its second petition and filed a Pa.R.A.P. 1925(b) statement.

---

[4] Generally, a petition to deviate requests a court to "modify an administrative provision of a charitable trust to the extent necessary to preserve the trust." 20 Pa.C.S. § 7740.3(c); *see generally In re Tr. B Under Agreement of Richard H. Wells Dated Sept. 28, 1956*, 311 A.3d 1057, 1073 (Pa. 2024) (*Wells*).

The orphans' court filed a responsive decision, reasoning that its order denying the Society's first petition to intervene was without prejudice. Orphans' Ct. Op. at 6. As for the merits of the Society's second petition to intervene, the court stated that the Society had "failed to sufficiently plead or present evidence" that the petition to deviate posed "an immediate harm" to the Society's "remaining interest." *Id.* at 11. In the court's view, the Society's alleged harm was "simply anticipatory." *Id.* Relatedly, the court noted that under the 2009 contract, the Society granted title outright to the Museum subject to "three ongoing contractual requirements." *Id.* at 12, 14. However, nothing of record established that Drexel would not comply with those terms. The court further opined that the Society failed to establish it had any interest, let alone a "substantial, direct, or immediate interest," that would be affected by the transfer of the Collection to Drexel. *Id.* at 12-14, 16 (discussing *Tr. Under Will of Augustus T. Ashton*, 260 A.3d 81 (Pa. 2021) (*Ashton*), and *Valley Forge Hist. Soc'y v. Wash. Mem'l Chapel*, 426 A.2d 1123 (Pa. 1981) (*Valley Forge*)).

## II. APPLICATION TO QUASH[5]

The orphans' court orally denied the Society's first petition to intervene: the court "has listened very carefully to the evidence that was presented. . . . And at this time, the [c]ourt is denying the petition to intervene *without prejudice*. . . . I will, however, allow the [Society] to offer testimony or have a voice at this hearing."

---

[5] Typically, an order denying a petition to intervene may be appealable as a collateral order or by permission. *In re Barnes Found.*, 871 A.2d 792, 794 (Pa. 2005) (*Barnes*); *Markham v. Wolf*, 136 A.3d 134, 138 n.4, 146 (Pa. 2016); *accord Shirley v. Pa. Legis. Reference Bureau*, 318 A.3d 832, 852 (Pa. 2024); *see also Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 432 (Pa. 2006). *Shirley* resolved whether the intervenors could intervene in a public trust, in which the people were the named beneficiaries. *See Shirley*, 318 A.3d at 844; *Pa. Env't Def. Found. v. Pa.*, 161 A.3d 911, 931-32 (Pa. 2017). We read all decisions against their facts, may conditionally cite to Superior Court decisions, and may affirm on other grounds. *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009); *Rickell v. Dep't of Transp., Bureau of Driver Licensing*, 289 A.3d 1155, 1160 n.10 (Pa. Cmwlth. 2023); *Mazer v. William Bros. Co.*, 337 A.2d 559, 562 n.6 (Pa. 1975).

4

N.T., 2/28/22, at 39-40 (emphasis added). The court's written order stated that the "petition to intervene is denied," *i.e.*, with no qualifier. Order, 3/3/22.

## A. Arguments

The City argues that the Society failed to timely appeal from the order denying the Society's first petition to intervene. Appl. to Quash, 7/21/22, at 2, 5-6 (discussing *Barnes*, and *K.C. v. L.A.*, 128 A.3d 774 (Pa. 2015)). As for the second petition to intervene, the City contends that it was substantively identical to the Society's first petition. *Id.* at 4, 7. The second petition, per the City, did not "reset the clock" for appealing from the order denying the first petition. *Id.* at 7-8. Finally, the City emphasizes that the court's written order lacks any "without prejudice" language. The City thus reasons that a "written order controls over a verbal pronouncement" of "without prejudice." *Id.* at 8 (citing *Commonwealth v. Borrin*, 80 A.3d 1219, 1226 (Pa. 2013) (plurality)). Regardless, the City concludes, the court's statement of "without prejudice" was directed to the Society's ability to "offer testimony or have a voice." *Id.*

The Society counters that *Barnes* and *K.C.* "did not consider the impact of a second petition to intervene based on a developed factual record." Answer to Appl. to Dismiss, 8/4/22, at 7. The Society claims an appeal can be timely filed from the denial of the second intervention petition notwithstanding that more than 30 days had elapsed from the denial of the first intervention petition. *Id.* at 6 (citing *Gleason v. Alfred I. DuPont Hosp. for Child.*, 260 A.3d 256 (Pa. Super. 2021)). The Society emphasizes that the court's denial was "without prejudice." *Id.* at 3, 8-9 (citing *Robinson v. Trenton Dressed Poultry Co.*, 496 A.2d 1240, 1243 (Pa. Super. 1985) (*Trenton*)). The Society stresses that its second petition contained "additional facts and bases" for intervention based on the February 2022 hearing and subsequent

events.  *Id.* at 9.  For example, the Society cites testimony that the Collection would be moved from warehouse storage to a more suitable location.  *Id.* at 12.

## B. Discussion

An order is appealable if the appellant is "out of court" or barred from "presenting the merits."  *Pugar v. Greco*, 394 A.2d 542, 545 (Pa. 1978); *see generally* Pa.R.A.P. 313, 341.  A non-dispositive order contemplating further proceedings typically should not be construed as a dispositive ruling on the merits.  *See Pugar*, 394 A.2d at 545.[6]  In sum, an order with the qualifying phrase "without prejudice" ordinarily would not put an appellant "out of court" or bar merits litigation.

In *Barnes*, the orphans' court denied a non-party's petition to intervene. *Barnes*, 871 A.2d at 793.  It was unclear if the order was with or without prejudice. *See id.*  The non-party did not appeal until after the court entered its final order resolving the underlying merits.  *Id.*  The Superior Court denied a motion to dismiss the non-party's appeal as untimely and for lack of standing.  *Id.* at 793-94.  Our Supreme Court accepted appellate review and quashed the appeal, essentially reversing the Superior Court.  *Id.* at 794-95 (reasoning that an order "denying intervention . . . must be appealed within thirty days of its entry . . . , or not at all, precisely because the failure to attain intervenor status forecloses a later appeal" (citations omitted)).[7]

---

[6] *See also In re Bell*, 25 A.2d 344, 350 (Pa. 1942) (stating the "phrase 'without prejudice' ordinarily imports the contemplation of further proceedings and when it appears in an order or decree it shows that the judicial act done is not intended to be *res judicata* of the merits . . . .").

[7] In support, the *Barnes* Court cited,  *inter alia*, *B.H. by Pierce v. Murphy*, 984 F.2d 196 (7th Cir. 1993).  In *Murphy*, the district court had denied the petitioner's first motion to intervene on the merits.  *Murphy*, 984 F.2d at 198.  The petitioner did not immediately appeal and "again moved to intervene . . . on essentially the same grounds offered in his first motion," which the district court denied.  *Id.*  The petitioner eventually appealed the denial of both motions.  *Id.* at 199.  The *Murphy* Court held that because the petitioner had appealed more than 30 days after the district court's denial of each motion to intervene, the appeal was untimely.  *Id.*  The remaining cases cited in *Barnes* did not involve a second petition to intervene.

In *K.C.*, the Superior Court quashed the appellants' appeal from an order denying their petition to intervene. *K.C.*, 128 A.3d at 776; Order (C.C.P. Phila., No. 2013-FC-0708, filed Jan. 2, 2015) (reflecting no "with" or "without" qualifiers). Our Supreme Court reversed, reasoning that the order was an appealable, collateral order. *K.C.*, 128 A.3d at 779-80 (framing *Barnes* as "unequivocally" requiring "any party who was denied intervention and who satisfies the requirements of Rule 313 to appeal from the order denying intervention within 30 days . . . or lose the right to appeal the order entirely" (cleaned up)). In sum, the *K.C.* appellants had timely appealed from the order denying their petition to intervene. *Id.* at 781. Neither *Barnes* nor *K.C.*, however, addressed the appealability of an order resolving a second intervention petition. *Accord Shirley*, 318 A.3d at 847 (resolving appeal from an order that did not qualify its denial of intervention as "with" or "without" prejudice).

The *Gleason* Court resolved an appeal from an order denying an intervenor's second petition to intervene. *Gleason*, 260 A.3d at 260. The trial court denied the intervenor's first petition to intervene without qualifying its denial as "with" or "without prejudice." *Id.*[8] The intervenor filed an unsuccessful second petition to intervene and appealed. *Id.* The Court held that the second denial was an appealable, collateral order. *Id.* at 261-62. The Court, however, did not address the intervenor's failure to appeal from the first order. *See id.*

In *Loftus v. Decker*, 289 A.3d 1093 (Pa. Super. 2023) (*en banc*), the

---

[8] The *Gleason* record reflects that the trial court's order denying the first petition to intervene did not use the terms "with" or "without prejudice." *See* Order, *Gleason* (C.C.P. Phila., Nos. 160502115, 170503992, filed May 14, 2020). Similarly, the order denying intervention in *Shirley* also did not use the phrase "without prejudice." Ex. A to Notice of Appeal (Pa., No. 85 MAP 2002, filed July 20, 2022) (order); *see generally* Pa.R.E. 201 (defining judicial notice); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (taking judicial notice of records in other cases); *accord Mina v. U.S. Dist. Ct. for E. Dist. of Pa.*, 710 Fed. App'x 515, 517 n.3 (3d Cir. 2017) (*per curiam*) (same).

plaintiff filed a praecipe for a writ of summons, and a non-party filed a petition to intervene. *Loftus*, 289 A.3d at 1095-96. The trial court denied it "without prejudice," reasoning that without a complaint, there were no facts or causes of action and the non-party could not establish a legally enforceable interest necessary to intervene. *Id.* at 1096. Thus, the court held that the non-party could not file a second petition to intervene until after the plaintiff filed a complaint. *Id.* The *en banc* Court quashed the non-party's appeal, reasoning that the order was not an appealable, collateral order.[9] *Id.* at 1102; *see also Trenton*, 496 A.2d at 1242-43.

The *Trenton* Court examined the term "without prejudice" in a somewhat analogous procedural posture. *Trenton*, 496 A.2d at 1242. The trial court dismissed the plaintiff's writ of summons without prejudice. *Id.* The plaintiff filed a complaint, the defendant demurred, the court dismissed the complaint with prejudice, and the plaintiff appealed both orders. *Id.* The Court quashed as untimely the plaintiff's appeal from the order dismissing the writ without prejudice. *Id.* at 1242-43 (explaining that "the phrase 'without prejudice' ordinarily imports the contemplation of further proceedings"). Thus, the trial court's "without prejudice" order did not bar the plaintiff from filing a complaint. *Id.*

To recap, in *Gleason*, *K.C.*, and possibly *Barnes*, the orders denying intervention did not use the terms "with" or "without prejudice." In each case, the orders were deemed appealable, collateral orders. On the other hand, *Loftus* and *Trenton* construed the term "without prejudice", but neither involved a second petition to intervene. *Cf. Loftus*, 289 A.3d at 1096, *and Trenton*, 496 A.2d at 1242, *with Gleason*, 260 A.3d at 260.

_____

[9] Although the *Loftus* non-party cited *Barnes*, *see* Br. for Intervenor (Pa. Super., No. 611 WDA 2021, filed Oct. 25, 2022), 2022 WL 17370354, at *12, the *Loftus* Court did not address the *Barnes* Court's statement that an order denying intervention must be appealed within 30 days.

8

Instantly, we are persuaded by caselaw interpreting the qualifying phrase "without prejudice." *See Loftus*, 289 A.3d at 1096; *Trenton*, 496 A.2d at 1242. Although those cases did not involve a second petition to intervene, we must construe *Gleason, K.C.*, and *Barnes* against their procedural postures. *See Maloney*, 984 A.2d at 485-86. Mandating an appeal from an order denying a petition to intervene "without prejudice" conflicts with other caselaw construing the phrase "without prejudice" as contemplating future rulings on the merits. *See, e.g.*, *Trenton*, 496 A.2d at 1243; *Pugar*, 394 A.2d at 545; *Bell*, 25 A.2d at 350. In sum, the orphans' court's bench pronouncement of "without prejudice" in denying the Society's first petition contemplated further proceedings, N.T., 2/28/22, at 39, and the Society was not required to appeal that order. *See Trenton*, 496 A.2d at 1243; *Gleason*, 260 A.3d at 261-62. *Cf. Loftus*, 289 A.3d at 1096.

We also disagree with the City's contention that the Society's petitions to intervene were identical. The Society's second petition to intervene, filed in April 2022, addressed testimony presented at the February 2022 hearing and subsequent events. *Compare* Pet. to Intervene, 4/7/22, ¶¶ 42-60, *with* Pet. to Intervene, 1/19/22.

For these reasons, we deny the City's application to quash.[10] *See Barnes*, 871 A.2d at 794.

### III. ISSUES

The Society raises four issues. First, the Society asserts that it has standing to intervene as a contracting party with the Museum and as a trust beneficiary. Soc'y's Br. at 2. Second, the Society has a "special interest" in the trust

---

[10] We thus reject the City's suggestion that the orphans' court invocation of "without prejudice" referred to the Society's ability to present testimony. *Compare* Appl. to Quash at 8, *with* N.T., 2/28/22, at 39. The transcript reflects that the court was denying the *petition* to intervene without prejudice. Finally, we decline the City's invitation to apply *Borrin* as that case involved penal interests not present here. *See Borrin*, 80 A.3d at 1226.

9

to prevent damage to its remainder interest. *Id.* at 3. Third, the Society contends the AG cannot represent the Society's interests adequately. *Id.* Fourth, the Society maintains the court erred by preventing the Society from presenting witnesses. *Id.*

## IV. DISCUSSION[11]

### A. The Society Lacks a Cognizable Interest

Pennsylvania Rule of Civil Procedure 2327(4) provides that at "any time during the pendency of an action," a non-party "shall be permitted to intervene" if "the determination of such action may affect any legally enforceable interest of such person . . . ." Pa.R.Civ.P. 2327(4). "Whether a potential party has a legally enforceable interest permitting intervention under Rule 2327(4) turns on whether they satisfy our standing requirements."[12] *Shirley*, 318 A.3d at 852 (cleaned up); *Allegheny*, 309 A.3d at 843. Standing refers to a litigant's ability to start or participate in an action by demonstrating aggrievement. *Markham*, 136 A.3d at 140; *Shirley*, 318 A.3d at 856; *Allegheny*, 309 A.3d at 832; *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005) (*Palisades*).

Aggrievement, in turn, requires a litigant to demonstrate a "substantial, direct[,] and immediate interest in the outcome of the litigation." *Allegheny*, 309 A.3d at 832 (citation omitted); *Shirley*, 318 A.3d at 852. First, a substantial interest is one that surpasses the "abstract interest of all citizens in having others comply

___

[11] Generally, although "issues of standing present questions of law," standing may also "involve factual questions." *Allegheny Reprod. Health Ctr. v. Dep't of Hum. Servs.*, 309 A.3d 808, 831 (Pa. 2024) (plurality) (*Allegheny*); *Citizens Against Gambling Subsidies, Inc. v. Pa. Gaming Control Bd.*, 916 A.2d 624, 627 (Pa. 2007) (*per curiam*). With respect to the former, our standard of review is *de novo*. *Allegheny*, 309 A.3d at 831. Similarly, whether a petitioner may intervene is also a question of law and, thus, our standard of review is *de novo*. *Id.* at 843.

[12] Our Supreme Court explained that "the exact boundaries of the legally enforceable interest limitation (of Pa.R.Civ.P. 2327(4)) are not clear." *In re Pa. Crime Comm'n*, 309 A.2d 401, 406 (Pa. 1973) (*Commission*) (cleaned up). The boundaries are unclear because our courts desired flexibility "to prevent the curious and meddlesome from interfering with litigation not affecting their rights." *Id.* (cleaned up).

10

with the law." *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 282 (Pa. 1975) (plurality) (*Penn*). Second, a "'direct' interest mandates a showing that the matter complained of caused harm to the party's interest, *i.e.*, a causal connection between the harm and the violation of law." *Palisades*, 888 A.2d at 660 (cleaned up). The harm must not be conjectural and should "flow as a direct consequence" of the proceedings in which the intervenor seeks to participate. *Commission*, 309 A.2d at 407. Third, an "interest is 'immediate' if the causal connection is not remote or speculative." *Palisades*, 888 A.2d at 660; *accord Shirley*, 318 A.3d at 852; *Penn*, 346 A.2d at 283.

In support of its first issue, the Society raises two overlapping arguments. First, the Society contends that it has standing to intervene under contract law because it was a party to the 2009 contract, in which the Society conveyed title to its artifacts to the Museum. Second, the Society asserts that it is a trust beneficiary, and, thus, has standing to intervene under trust law as well.

## 1. The Society's Standing Under Contract Law

### a. Arguments

First, the Society argues that it has *de facto* standing as a party to the 2009 contract. Soc'y's Br. at 37-38 (asserting that "contracting parties do not need to satisfy the" standing test articulated by *Penn*). According to the Society, its contractual rights alone were sufficient to establish it was an indispensable party. *Id.* at 38-40 (citing, *e.g.*, *Borough of Wilkinsburg v. Horner*, 490 A.2d 964 (Pa. Cmwlth. 1985), *Keener v. Zoning Hr'g Bd. of Millcreek Twp.*, 714 A.2d 1120 (Pa. Cmwlth. 1998), and *Citimortgage, Inc. v. Comini*, 184 A.3d 996 (Pa. Super. 2018)). Per the Society, the court erred by relying only on standing caselaw that did not involve any contractual interests. *Id.* at 40-41. The Society also argues that the orphans' court

11

failed to construe all written instruments together. *Id.* at 43-46.

The City counters that, per the 2009 contract, the Society "*irrevocably* and *unconditionally*" transferred title to its artifacts. City's Br. at 33 (emphases in original). In the City's view, because the Society relinquished title, it has no standing as a former owner. *Id.* The City emphasizes that the Society will retain any contingent contractual rights even after the City has transferred the Collection to Drexel. *Id.* at 33-34. The City reasons, however, that the Society has no standing based on such rights because the Society cannot establish that Drexel would breach the 2009 contract. *Id.* at 34. The AG generally agrees that the harm to Society's contingent interests is speculative and remote. AG's Br. at 21.

### b. Discussion

In *Horner*, a taxpayer successfully enjoined a borough from performing a contract with another company, which was not a party. *Horner*, 490 A.2d at 964-65. The borough appealed, and the company intervened. *Id.* This Court held that the company "has a contract right which is directly related to the taxpayer's claim against the borough." *Id.* at 965. Accordingly, because the company was a contracting party, it was also an indispensable party to the injunction hearing. *Id.*

In *Keener*, a property owner appealed a local agency ruling to the trial court, at which time one of the owner's neighbors successfully intervened. *Keener*, 714 A.2d at 1121. Mid-suit, the neighbor sold the property subject to the neighbor's lien, which prompted the owner to successfully dismiss the neighbor as an intervenor. *Id.* at 1121-22. The neighbor appealed to this Court, which reversed, reasoning that because the neighbor held a lien, it had a legally enforceable interest and, thus, retained intervenor status. *Id.* at 1123.

In *Comini*, a mortgagee owned property in which the deed had a clause

12

providing a right of first refusal to a third party. *Comini*, 184 A.3d at 997. Following a default, the mortgagor bought the property and recorded a deed containing the clause. *Id.* The mortgagor (now owner) filed a petition to remove that clause, the third party unsuccessfully sought to intervene, the trial court granted the petition, and the third party appealed. *Id.* at 997-98. The Court reasoned that the court erred because the third party's interest was legally enforceable under Rule 2327(4). *Id.*

Clearly, these cases demonstrate that a non-party may be permitted to intervene in litigation based upon a relevant, contractual interest. However, the mere existence of some contractual interest does not confer *de facto* standing to intervene. Rather, before recognizing a non-party's right to intervene, a reviewing court must consider whether the interest may be affected by the outcome of the litigation, *i.e.*, whether it is substantial, direct, and immediate.[13]

Instantly, to intervene, the Society was required to demonstrate that it would be "negatively impacted in some real and direct fashion" by a ruling on the City's petition to deviate. *See Allegheny*, 309 A.3d at 844; *Commission*, 309 A.2d at 406. For example, the Society needed to prove that the court's decision on the petition to deviate would impair the performance of the 2009 contract or result in a breach. *Cf. Horner*, 490 A.2d at 964-65. Unlike *Horner*, the court's decision on the City's petition to deviate did not prevent either party from performing the 2009 contract. *Cf. id.* Alternatively, the Society needed to prove that the court's decision

---

[13] We note, for example, that "nearly all the modern American authorities—decisions, model acts, statutes, and commentaries—deny a donor standing to enforce a restricted gift to public charity absent express retention of a reversion in the donative instrument." Iris J. Goodwin, <u>Donor Standing to Enforce Charitable Gifts: Civil Society vs. Donor Empowerment</u>, 58 Vand. L. Rev. 1093, 1145 (2005). "This resistance to donor standing . . . can be dated" to *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518, 566-69 (1819). *Id.* Here, the 2009 contract has no such right. Orphans' Ct. Op., at Ex. F (transferring "irrevocably and unconditionally" "all of the Society's right, title, and interest" in the Society's artifacts); *see also* 15 Pa.C.S. § 5548.1.

13

would have impacted the Society's legal title to the Collection. *Cf. Keener*, 714 A.2d at 1123; *Comini*, 184 A.3d at 997-98. Unlike those intervenors, the Society has no analogous legal title to the Collection. *Cf. Keener*, 714 A.2d at 1123; *Comini*, 184 A.3d at 997-98. On this record, the Society cannot rest solely on its status as a contracting party to the 2009 contract as establishing its substantial, direct, and immediate interest in the petition to deviate. *See* Soc'y's Br. at 37-38; *Allegheny*, 309 A.3d at 832.

**2. The Society's Standing to Intervene Under the Uniform Trust Act (Act)**[14]

**a. Arguments**

Second, the Society argues that it is a trust beneficiary for two reasons. Soc'y's Br. at 41-42 (discussing *Ashton*). First, prior to 1994, the Society originally had the authority to appoint a trustee. *Id.* at 42. Second, the Society donated to the Collection to the Museum subject to certain conditions. *Id.* Thus, the Society opines that as a trust beneficiary, it does "not need to satisfy a separate 'standing' test to object to changes in the Trust." *Id.* at 41 (cleaned up).

The City disagrees for two alternative reasons: (1) the trust is a charitable trust; and (2) the instrument itself reflects the settlor's "intent to create the Trust for the benefit of the public generally," and not the Society, individually. City's Br. at 27-28. As for the first reason, the City emphasizes that because a charitable trust's only beneficiary is the public, the Society could never be a beneficiary. *Id.* at

---

[14] We apply the rules of statutory construction, 1 Pa.C.S. §§ 1901-1999, in interpreting the Act. Although the text controls, we may rely upon the Act's comments, nonconflicting jurisprudence predating the Act, and applicable non-Pennsylvania jurisprudence. *See* 1 Pa.C.S. § 1939; 20 Pa.C.S. ch. 77 cmt.; 1 Pa.C.S. § 1927; *Wells*, 311 A.3d at 1068; *In re Tr. Under Deed of Walter R. Garrison*, 288 A.3d 866, 873-74 (Pa. 2023); *accord* 20 Pa.C.S. § 7706 & cmt. If a conflict exists between the Act and the terms of the trust, then the terms generally prevail. 20 Pa.C.S. § 7705(a)-(b). Finally, during this appeal, the Act was amended but no party requested permission to address the import of the amendments. *See* Act of July 15, 2024, P.L. 64.

14

27, 29-30. Thus, per the City, *Ashton* is inapt because that case resolved standing in a "private, non-charitable family trust." *Id.* at 28 (emphases omitted). Although the *Ashton* trust had a "charitable remainder," the City maintains the *Ashton* Court rejected the existence of the remainder as a dispositive factor in resolving standing. *Id.* at 29.

As for the second reason, the City argues that even assuming a charitable trust could have an individual, named beneficiary, the instant instrument did not identify the Society as such a beneficiary. *Id.* at 30. The City references a 1994 amendment to the instrument that removed the Society's authority to appoint a trustee. *Id.* at 31. Thus, per the City, the orphans' court correctly interpreted the instrument as excluding the Society as an intended beneficiary. *Id.* at 30-31. The AG did not directly address the Society's argument.

### b. Discussion

Generally, the Act defines a "beneficiary" as a "person" that "(1) has a present or future beneficial interest in a trust, vested or contingent; or (2) in a capacity other than that of trustee or protector, holds a power of appointment over trust property." 20 Pa.C.S. § 7703.[15] A settlor's intent, as memorialized in the language of the trust instrument, controls in identifying any beneficiaries. *Id.*; *see also* 20 Pa.C.S. § 7710(b). For example, any "person with capacity to take and hold legal title to intended trust property has capacity to be a beneficiary. Except as

---

[15] *Accord* Restatement (Third) of Trusts § 48 cmt. (Am. L. Inst. 2003) (stating that persons "who may incidentally benefit in some manner from the performance of the trust are not beneficiaries of the trust and cannot enforce it. *Cf.* Restatement Second, Contracts § 302 (on incidental beneficiaries of contracts)."). Although the Act does not define "beneficial interest," the Act defines "interests of the beneficiaries" as the "beneficial interests provided in the terms of a trust" "including any amendments thereto." 20 Pa.C.S. § 7703 & cmt. The term "power of appointment" refers to a "power given to a person by the terms of a trust . . . to grant and define a beneficial interest in trust property or to grant a power of appointment over the trust property." *Id.*

15

limited by public policy, the extent of a beneficiary's interest is determined solely by the settlor's intent." *Id.* § 7703 cmt. (citations omitted). Further, "the holder of a power of appointment" may be classified as a beneficiary. *Id.*

A settlor may create a "charitable trust," which is defined as a trust created for a "charitable purpose." 20 Pa.C.S. §§ 7703, 7735(a). Typically, however, a charitable trust does "not have beneficiaries in the usual sense." *Id.* § 7703 cmt.[16] "Because a charitable trust is not created to benefit ascertainable beneficiaries but to benefit the community at large, persons receiving distributions from a charitable trust are not beneficiaries as that term is defined in this" Act. *Id.* (cleaned up). Thus, the "fact that a person incidentally benefits from the trust does not mean that the person is a beneficiary." *Id.* Since a charitable trust typically lacks ascertainable beneficiaries, the Act defines who may enforce such a trust. *Id.* § 7735(c) (listing the settlor, AG, and "a charitable organization expressly named in the terms of the trust to receive distributions from the trust or any other person who has standing to do so").

In *Ashton*, the settlor had created a trust with charitable and noncharitable beneficiaries, and the trustee wanted to divide the trust by creating two new trusts: charitable and noncharitable. *Ashton*, 260 A.3d at 83-84. The parties disputed whether one of the noncharitable, named income beneficiaries had automatic standing to challenge the trustee. *Id.* at 88. The Court held that the named income beneficiary had an equitable interest "to enforce the trust" because she was "entitled to have the trust corpus be used to generate the benefit" provided by the instrument. *Id.* at 91. The Court reasoned that the beneficiary's interest was

---

[16] There is one exception: if the charitable trust terms explicitly designate a charitable organization to "receive distributions," then such organization is "granted the rights of" a beneficiary. 20 Pa.C.S. § 7710(b) & cmt.

16

"substantial, direct, and immediate," because the trustee's duties "were not owed to the general public, but to the beneficiaries." *Id.* at 93. Beneficiaries that have "an equitable interest in the trust res," the Court observed, "have standing to bring a petition to remedy a breach of trust." *Id.* at 91 (citation omitted). *Ashton*, however, did not resolve whether an alleged *unnamed* beneficiary of a *charitable* trust had standing to intervene.

Apparently, we have not addressed whether an unnamed beneficiary of a charitable trust has standing to intervene under the Act.[17] However, courts have addressed the issue in other states that have adopted the Act. *See* 1 Pa.C.S. § 1927. For example, in *Hicks v. Dowd*, 157 P.3d 914 (Wyo. 2007), a charitable trust preserved the landscape of its property via easement. *Id.* at 916. Very simply, appellants/intervenors sought to challenge the termination of the easement although they were not named as beneficiaries of the trust. *Id.* at 917. The Court held that only a settlor, the attorney general, or a qualified beneficiary has standing to enforce the charitable trust, *i.e.*, the easement. *Id.* at 921. Because the appellants were neither a settlor nor the attorney general, the Court examined whether the appellants— unnamed beneficiaries—fell within the class of "qualified beneficiaries." *Id.* at 915,

---

[17] The Superior Court addressed an analogous issue: whether an unnamed or contingent beneficiary of a *noncharitable* trust had standing. *See, e.g.*, *In re Est. of Fox* (Pa. Super., No. 1974 EDA 2019, filed Apr. 3, 2020) (*Fox*), 2020 WL 1656038, 2020 Pa. Super. Unpub. LEXIS 1149; *In re Rosemary C. Ford Inter Vivos QTIP Tr.*, 176 A.3d 992, 1000 (Pa. Super. 2017) (*Ford*); *Rock v. Pyle*, 720 A.2d 137 (Pa. Super. 1998). Without recounting each case, the Superior Court held that an unnamed (or a named, contingent) beneficiary of a noncharitable trust lacked standing to intervene. *See Fox*, 2020 WL 1656038, *5, 2020 Pa. Super. Unpub. LEXIS 1149, *13; *Ford*, 176 A.3d at 1000. The contingent beneficiary could not intervene until the conditions were met. *Ford*, 176 A.3d at 1000; *accord In re Tr. of John S. Middleton*, 313 A.3d 1090, 1106 (Pa. Super. 2024). The unnamed "beneficiary" lacked standing by not being named in the instrument. *See Fox*, 2020 WL 1656038, *5, 2020 Pa. Super. Unpub. LEXIS 1149, *13; *Rock*, 720 A.2d at 142-43 (holding that a contractual obligation to make annual irrevocable gifts to the noncharitable trust was an insufficient basis for standing).

917. In Wyoming, a qualified beneficiary is a beneficiary entitled to the trust's income or has a vested remainder interest. *Id.* at 921; *accord* 20 Pa.C.S. § 7703. Because the appellants were neither entitled to the trust's income nor had a vested remainder interest, the Court held they lacked standing. *Hicks*, 157 P.3d at 921.[18]

Here, the Society argued that it is a beneficiary because it (1) previously held the power of appointment, and (2) conditionally donated artifacts to the Museum. *See* Soc'y's Br. at 41-42. The Act, however, commands us to review the instrument to ascertain whether the Society is a named beneficiary. *See* 20 Pa.C.S. § 7703. Upon review, we agree with the orphans' court that the instrument is silent and does not expressly designate the Society as a beneficiary, let alone a beneficiary receiving any distributions. *See id.* §§ 7703 & cmt., 7710(b) & cmt. The Society, like the *Hicks* appellants, were simply not identified as beneficiaries in the instrument and thus has no standing to intervene. *See Hicks*, 157 P.3d at 921.

The Society cannot rely on *Ashton*, as that case resolved whether a *named* beneficiary to a noncharitable trust had standing. *See Ashton*, 260 A.3d at 83; *see also Maloney*, 984 A.2d at 485-86. Indeed, in two cases—albeit not involving charitable trusts—the Superior Court held that the putative intervenor had no standing because they were not identified in the trust instruments as direct beneficiaries. *See Ford*, 176 A.3d at 1000 (explaining that a *contingent* beneficiary had no standing until such time the conditions were triggered); *Fox*, 2020 WL 1656038, at *5, 2020 Pa. Super. Unpub. LEXIS 1149, *13 (rejecting putative intervenor's standing because she was not a named beneficiary); *see also Rock*, 720 A.2d at 142-43 (same).

---

[18] We discuss two pre-Act cases below. *See In re Milton Hershey School*, 867 A.2d 674 (Pa. Cmwlth. 2005) (*en banc*) (*Hershey I*), *rev'd*, 911 A.2d 1258 (Pa. 2006) (*Hershey II*); *In re Francis Edward McGillick Found.*, 642 A.2d 467, 470 (Pa. 1994) (*McGillick*) (holding that an unnamed incidental beneficiary of a charitable trust had standing to enforce the trust).

18

The Society's pre-1994 power of appointment and conditional donation are equally insufficient to grant the Society standing as a trust beneficiary. First, the Society no longer has any say in the control of the trust. *See* 20 Pa.C.S. § 7703. Without a present "power of appointment," the Society is not a beneficiary. *See id.* *Cf. Hershey II*, 911 A.2d at 1262 (explaining, in a pre-Act case, that an unnamed incidental beneficiary with no power over the trust has no standing).

Second, the Society's contractual interests—the three conditions attached to its donation—do not establish the Society's present or future beneficial vested or contingent interest in the trust. *See* 20 Pa.C.S. § 7703. Again, under the Act, only the settlor, AG, and an identified charitable organization that receives trust distributions has the rights of a beneficiary. *See id.* §§ 7703, 7735(c). Because the instrument does not identify the Society, the Society is not a beneficiary regardless of its contractual interests. By extension, we necessarily reject the Society's assertion that the orphans' court should have construed the written instruments together. *See id.* § 7703 cmt. (stating that only the instrument controls).[19]

In sum, the Society's alleged status as either (1) a contracting party or (2) an unnamed beneficiary does not negate the requirement that the Society establish aggrievement. In other words, the Society has not established that merely because it is a contracting party or an unnamed beneficiary, it necessarily would be adversely affected, *i.e.*, directly, ascertainably harmed, by a decision on the City's petition to deviate. *See Palisades*, 888 A.2d at 660; *Commission*, 309 A.2d at 407.

---

[19] Further, the 2009 contract contains no right of title reversion. Orphans' Ct. Op., at Ex. F; Goodwin, *supra* note 13, at 1145 (stating that absent a contractual right of reversion, a donor has no standing to enforce a restricted gift to a public charity).

## B. Existence of a Special Interest Under Pa.R.Civ.P. 2327(4)

### 1. Background

A party shall be permitted to intervene if "the determination of such action may affect any legally enforceable interest of such person . . . ." Pa.R.Civ.P. 2327(4). In *Valley Forge*, a pre-Act case, a chapel owned the property, which it unhappily occupied with a historical society. *Valley Forge*, 426 A.2d at 1125. Litigation ensued, the society successfully obtained an injunction preventing the chapel from evicting the society, and the chapel challenged the society's standing. *Id.* at 1125, 1127. The Court explained that only the AG, "a member of the charitable organization or someone having a special interest in the trust" had standing to enforce an unwritten trust. *Id.* at 1127. Because the AG declined to enforce the trust and the society was not a member of the charitable organization, the Court held that the society "must satisfy the standing requirement by demonstrating a special interest in the trust." *Id.* The Court applied a multi-factor test and held that the society had a special interest. *Id.* at 1127-28.

### 2. Arguments

The Society asserts it has "legally cognizable interests in preventing waste and damage to its right to receive its remainder interest," which establishes standing under Rule 2327(4). Soc'y's Br. at 47. For instance, the Society has an interest in preventing any "risk of loss or destruction" from the Collection's storage and transportation. *Id.* at 48-50 (analogizing to *Valley Forge*). The Society also contends it has an interest because Drexel, as a Trustee, has a fiduciary obligation "to maximize the value" of the Society's "beneficial interest." *Id.* at 49. The Society alternatively posits that it has an interest under the Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa.C.S. §§ 5101-6162, which purportedly grants "standing

20

to persons who are or may be affected by any corporate action." *Id.* at 49-50 (cleaned up) (discussing *Ciamaichelo v. Indep. Blue Cross*, 928 A.2d 407 (Pa. Cmwlth. 2007) (*Blue Cross*)). The Society concludes by distinguishing *Hershey II* because it has a contractual and special interest unlike the *Hershey II* intervenor. *Id.* at 51-52.

The City counters that the courts narrowly construe the "special interest" doctrine only to cases in which the parties are "directly involved with, or directly affected by" the instrument. City's Br. at 32-33. The City emphasizes that the Society "irrevocably and unconditionally" transferred title to the City. *Id.* at 33. The Society's status as former owner, the City argues, is insufficient to trigger standing under the "special interest" doctrine. *Id.*

Relatedly, the City reiterates that to the extent the Society has any interest based on "risk of loss or destruction" regarding the Collection, such interest is a *contractual* right. *Id.* at 33-34. The City emphasizes that the Society's contractual rights remain unchanged notwithstanding any transfer of the Collection to Drexel. *Id.* at 34. But even if the Society's contractual rights have any bearing on the City's petition to deviate, the City argues that the Society cannot establish any concrete harm. *Id.* at 34-35. The City explains that several contingent events must occur before the Society has a viable contract claim. *Id.* For instance, per the City, Drexel must decide to sell an artifact from the Collection, which may never occur. *Id.* at 35. The AG generally disputes that the Society established standing to intervene under Rule 2327(4). AG's Br. at 21-22.

### 3. Discussion

In the *Hershey* cases, our Supreme Court addressed whether an unnamed "beneficiary" of a trust could invoke the *Valley Forge* special interest factors. The factual posture is complex, but in *Hershey*, a charitable trust financed

21

a school. *Hershey I*, 867 A.2d at 679. As a result of legal issues, the trust, school, and AG negotiated a settlement agreement. *Id.* at 679-80. The trust instrument did not identify the school's alumni association as an intended beneficiary. *Hershey II*, 911 A.2d at 1260. Nevertheless, the association acted as an advisor and donated money to the settlement process, although it was not a party to the agreement. *Hershey I*, 867 A.2d at 679. Subsequently, the parties to the settlement amended their agreement. *Id.* at 680. The association moved to reinstate the original agreement. *Id.* The school and trust successfully challenged the association's standing, and the association appealed to this Court. *Id.* at 681.

This *en banc* Court reasoned that the association could have standing if it had "a special interest in the enforcement of the charitable trust . . . ." *Id.* at 687 (cleaned up). This Court applied the *Valley Forge* multi-factor test and held the association had standing. *Id.* at 689. Among those factors was the association's key role in negotiating the original settlement, the alumni's close relationship with the school, and the low risk of vexatious lawsuits by the association because the association was not a potential beneficiary. *Id.* at 689-90.

Our Supreme Court reversed this Court because the association was not a named beneficiary of the trust. *Hershey II*, 911 A.2d at 1263. In other words, it did not matter that the association established a "special interest" standing when the instrument did not identify the association as a beneficiary. *Id.* ("To give the association 'special interest' standing where the settlors of the trust specifically denied beneficiary status to its members, would surely contravene the settlors' intent expressed through their written trust." (cleaned up)). The Court emphasized that the instrument simply "did not contemplate the association, or anyone else," to have "standing to challenge" the trust's actions. *Id.* ("Nothing in this litigation would

22

affect the association itself; it loses nothing and gains nothing." (cleaned up)). In other words, the absence of the association as a named beneficiary in the instrument was dispositive, and this Court erred by applying the *Valley Forge* factors. *See id.*

Indeed, our Supreme Court distinguished *Valley Forge* because, unlike *Hershey*, there was no written trust instrument. *Id.* The Court also distinguished *McGillick*, in which an unnamed incidental beneficiary had standing to intervene. *Id.* at 1262. *McGillick* was distinguishable because that trust specifically instructed the unnamed beneficiary to select *other* beneficiaries. *Id.*

Instantly, the Society, identical to the *Hershey* association, also asserts it had a special interest under *Valley Forge*. *Cf.* Soc'y's Br. at 48-49, *with Hershey I*, 867 A.2d at 689. Unlike *Valley Forge* and like *Hershey*, a written trust instrument exists in the case at bar. *See Hershey II*, 911 A.2d at 1263. Identical to the *Hershey* association, the Society is also not a named beneficiary of the instrument. *See id.* Because the Society is not a named beneficiary, we need not address the import of its alleged interests in (1) preventing waste and damage or (2) ensuring Drexel maximizes a nebulous beneficial interest. *See id.* at 1262-63. If we did, we would be repeating our error in *Hershey I*, which addressed whether the association had a special interest *despite* not being named as a beneficiary in the instrument. *See id.*

We similarly reject the Society's skeletal assertion that it has standing under the Nonprofit Law, because the Society "may" be affected by the City's action. Initially, we are not persuaded that we should start applying the Nonprofit Law to the instant trust action, which is governed by the Act. Nevertheless, per the *Blue Cross* Court, the only relief permitted under the Nonprofit Law is the "production of any books, papers and records of the corporation and other relevant evidence which may relate to the" challenged action, *i.e.*, the petition to deviate. *Blue Cross*, 928

23

A.2d at 414 (quoting 15 Pa.C.S. § 5793(b)). We decline the Society's invitation to establish standing under the Act, *via* the Nonprofit Law, to resolve the City's petition to deviate. *See id.*[20]

## C. Adequacy of AG's Representation and Society's Fact Witnesses

Next, the Society recognizes that even if its intervention is permitted under Rule 2327, the orphans' court may refuse intervention if the AG could represent the Society's interests adequately. Soc'y's Br. at 52. Because we hold the Society has no standing, we need not address this issue.

Last, the Society concisely argues that the orphans' court erred by precluding the Society's fact witnesses at the hearing on its second petition to intervene. *Id.* In its view, the Society's fact witnesses would have established the Society's "immediate danger to a concrete interest." *Id.* at 59.

The Society has cited no legal authorities supporting its terse contention that the court was obligated to permit the Society's fact witnesses. This Court, however, cannot develop the Society's arguments. *See, e.g.*, *Banfield v. Cortés*, 110 A.3d 155, 168 n.11 (Pa. 2015). Because the Society opted not to discuss any legal authorities, appellate review is precluded. *See Boniella v. Commonwealth*, 958 A.2d 1069, 1072 n.8 (Pa. Cmwlth. 2008) (*per curiam*); *Mazer*, 337 A.2d at 562 n.6. Regardless, any testimony would not have altered the fact that the instrument does not identify the Society as a beneficiary. *See Hershey II*, 911 A.2d at 1263.

## V. CONCLUSION

For these reasons, we deny the City's application to quash the Society's appeal. The Society did not have to appeal from an order denying its first petition to intervene without prejudice. We reject the Society's arguments that it has standing

---

[20] To the extent that the Society hinted that its 2009 contract establishes a Rule 2327(4) special interest, we rejected that herein. *See also* Goodwin, *supra* note 13, at 1145.

under contract law, based solely upon its status as a party to the 2009 contract, and as an unnamed beneficiary under trust law.  We decline to recognize that the Society has any special interest in the trust.  Accordingly, we affirm the order denying the Society's second petition to intervene.


**LORI A. DUMAS, Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Atwater Kent Museum a/k/a    :
Philadelphia History Museum    :
at The Atwater Kent    :   No. 1042 C.D. 2022
    :
Appeal of: The Historical Society of    :
Pennsylvania    :

# **O R D E R**

AND NOW, this 19th day of December, 2024, we DENY the application to quash filed by the City of Philadelphia. We AFFIRM the order entered by the Court of Common Pleas of Philadelphia County, Orphans' Court Division, on March 3, 2022, denying the petition to intervene filed by The Historical Society of Pennsylvania.

 

**LORI A. DUMAS, Judge**